[L. A. No. 10014. In Bank.—September 14, 1929.]

HAROLD CARLSON, Special Administrator, etc., Respondent, v. CHARLES LANTZ, Appellant.

Newby & Newby and Winslow P. Hyatt for Appellant.

Marshall Stimson and Noel C. Edwards for Respondent.

THE COURT.—This is an appeal from a judgment for the plaintiff entered on the trial court's findings of fact and conclusions of law.

The plaintiff is a son of Bertha Carlson Witt, sometimes called Bertha Carlson or Bertha Schubert Witt, and sues in his representative capacity as special administrator of her estate. Bertha Carlson Witt died about February 5, 1923. Thereafter and about the twenty-first day of February, 1923,

a will dated January 5, 1921, by which the decedent devised and bequeathed all of her property to the defendant, Charles Lantz, was filed by Lantz for probate. A proceeding contesting the probate of that will was instituted by the plaintiff. On March 9, 1923, the plaintiff procured letters as special administrator, and on December 4, 1923, he filed the original complaint in the present action. On May 14, 1924, a jury in the proceeding contesting the probate of the will returned three special verdicts, namely: (1) That said Bertha Carlson was of unsound mind on the fifth day of January, 1921; (2) that the alleged will of January 5, 1921, was procured by undue influence of Charles Lantz; (3) that the alleged will of January 5, 1921, was procured by the fraud of Charles Lantz. The judgment in favor of the contestant in that proceeding, who is the plaintiff here, was affirmed by this court. (*Estate of Witt*, 198 Cal. 407 [245 Pac. 197].)

After the trial of the issues raised in the will contest, the plaintiff in this action by leave of court amended his complaint to conform to the facts adduced in that proceeding. There is no serious objection that the trial court, sitting as a court of equity, did not have the power and discretion to grant leave to file the amended complaint. Neither is the plaintiff's capacity to sue in his representative capacity seriously brought into question. The grant of power to collect and preserve all the personal property and all the rents, etc., of the real and personal property and all claims and demands of the estate, and take charge of and manage the real estate, and preserve the same from damage, etc., and commence, maintain and defend all suits and other legal proceedings necessary to carry out these powers, contained in the order appointing the plaintiff as special administrator, was sufficient authority to commence and maintain the present action. These points will therefore not further be noticed.

The amended complaint, among other allegations, in substance alleges that at the time of her death Bertha Carlson Witt was the equitable owner and in the possession of certain described real property which comprises several lots and parcels of land in Carlson Terrace, Elysian Heights tract and Angeleno Heights tract in the city of Los Angeles; that in April, 1920, the decedent employed the de-

fendant as her attorney to act for her in matters relating to the property described; that the decedent at that time was ill and frail, mentally and physically, and, imposing upon the confidence which the decedent reposed in him, the defendant with fraudulent intent to obtain for his own gain all of the described property, by various described transactions, procured the legal title either in himself or for his benefit in one Thomas A. Davis, a cousin of the defendant who resided at Goshen, Indiana. The details of these transactions as alleged and proved are more fully stated in the opinion in the *Estate of Witt, supra,* which may be referred to for greater particularity. The complaint also alleges the conditions surrounding the execution of the will and the fact that the petition for probate of the will described as the estate left by the decedent only some personal property valued at about $250. The plaintiff sought to have the defendant declared a trustee of the legal title to the real property described and for an accounting. The trial court found that the decedent was the equitable owner and in the possession of the real property described and entered its judgment that the defendant holds the legal title of said property as trustee for the plaintiff as special administrator of the estate of Mrs. Witt and directing the defendant, or the county clerk in the event of his refusal, subject to a lien in defendant's favor in the sum of $6,816.16, payable within a year, to execute within fifteen days a deed conveying the property described to the plaintiff as such administrator.

The main contentions made by the defendant by his answer, at the trial, and on this appeal, are that he was not acting as the attorney for Mrs. Witt, but was in fact acting only as her banker or other such agent to finance the recovery or redemption of the properties involved for their mutual benefit, and that the burden was therefore not on him to negative fraud in the transactions, but that the burden was on the plaintiff to prove affirmatively the existence of any fraud on the defendant's part; that the plaintiff has not sustained that burden; that, therefore, the defendant's motion for a nonsuit, should have been granted; that, at any rate or from any view, the transactions were fair and the parties were dealing at arm's length.

As to the first contention, that the defendant was not acting as attorney in the matters and therefore the confidential relationship of attorney and client did not exist, it might be stated at the outset that the basis offered by the defendant for that assertion is his own opinion which he testified he arrived at after mature consideration, as against the trial court's finding based on other sufficient evidence in the record to support it that the relationship did exist at all times, and the admissions of the defendant on the will contest that he was acting as attorney for Mrs. Witt. However, looking only at the factual evidence produced at the trial of the present action, we are satisfied that, whatever may be its nominal designation, such a fiduciary and confidential relationship was established between the defendant and Mrs. Witt throughout all the transactions involved as to make it incumbent upon the defendant so to conduct himself that no suspicion could be cast in his direction. If, therefore, such a relationship or the relation of attorney and client did exist, the motion for a nonsuit was properly denied.

We are compelled to the conclusion, from a review of the record, that the trial court's finding that the relationship of attorney and client did exist at all times is fully supported by the evidence. Whether, therefore, such fraud was alleged or proved as would sustain the rulings and judgment in the absence of any such relationship is not necessary to be considered. The well-settled law as to the duties and burdens of an attorney in his relationship with his client are summarized by the following language used by this court in *Estate of Witt, supra,* at page 419 of 198 Cal. [245 Pac. 202]: "All dealings between an attorney and his client for the benefit of the former are not only closely scrutinized, but are presumptively invalid on the ground of constructive fraud and such presumption can be overcome only by the clearest and most satisfactory evidence. Not only must the attorney offer clear and satisfactory evidence that the transaction between himself and his client was fair and equitable and no advantage was taken by him, but he must also offer proof that the client was fully informed of all matters relative to the transaction and was so placed as to be able to act understandingly and to deal with the attorney at arm's length. (*Kisling* v.

*Shaw,* 33 Cal. 425 [91 Am. Dec. 644]; *Cooley* v. *Miller & Lux,* 156 Cal. 510 [105 Pac. 981]; *Clark* v. *Millsap,* 197 Cal. 765 [242 Pac. 918].)'' (See, also, Civ. Code, secs. 2224, 2235.)

■ Whether the defendant planned or intended to gain an advantage over the fair value of his services is a question for the trial court, and if he did gain such an advantage then the burden was upon him to show that the transaction was fair. (*Pomeroy* v. *Collins,* 198 Cal. 46, 69 [243 Pac. 657].) ■ There is sufficient evidence in the record to sustain the court's finding ''that in all of the transactions between himself and Bertha Carlson, as evidenced by the various agreements between the said Charles Lantz and Bertha Carlson . . . said Charles Lantz was seeking his own advantage rather than that of Bertha Carlson.'' The evidence fully supports the finding that an advantage was gained by the defendant. ■ If the advantage be gained then the burden is upon the defendant to show that the transactions were fair and that the parties dealt at arm's length, and unquestionably the defendant has not sustained that burden. It is claimed by him that four contracts dated May 17, 1920, whereby he was to receive certain shares or interests in the proceeds or profits realized from property redeemed or recovered were merged into and were superseded by a later agreement comprising what is designated as the ''Happy New Year'' letter written by Mrs. Witt on January 3, 1921, and the defendant's acceptance thereof. In the ''Happy New Year'' letter, so called because it contained that greeting before the salutation, Mrs. Witt expressed her realization that, due to illness, her days were short, that ''something might happen rather suddenly,'' and requested the defendant to prepare a ''paper'' by which she would bequeath all of her property to him, leaving trinkets, etc., to her two boys. She expressed the assurance that Mr. Lantz, during her lifetime would never see her in want, but that he or his successor would see to it that she would be supplied with the necessities of life and that provision would be made for her burial in Rosedale Cemetery; that she would, in case she sold anything, report to him the sale and ''hand over'' to him the proceeds therefrom, ''or if in need hold or ask part of it, just as I or he sees best for me.'' In this letter

Mrs. Witt also stated that "all of property which comes through Borden can be transferred at once," and closed with the statement, "Mr. Lantz will know best how and what else to write, as I have complete trust and confidence in him, God bless him." By his letter of acceptance, also dated January 3, 1921, the defendant agreed, in consideration of the proposed bequest and the request that he "perform certain services," that he would see to it that Mrs. Witt should not be in want, "that she will have substantial, of the necessities 'of life," that when she passes away he will comply with her wishes as to her burial, and expressed the desire that his son fulfill the agreement in the event of his death before Mrs. Witt's demise. It will be noted that it was at about this time that the will was executed. Pursuant to the arrangement set out in these letters the defendant paid to Mrs. Witt $60 a month up to the time she died, that is, for about two years, and paid her doctors' and nurses' bills. The court found that during that period he collected $2,409.25 in rentals and advanced in all $8,976.41 in connection with the property and to and for Mrs. Witt personally; that he was entitled to a fee of $250 for services rendered in a foreclosure proceeding, leaving as the net amount of advances the sum of $6,816.16. The evidence fairly supports the finding that, though the properties were partially encumbered, the defendant stood to gain many more times, the value of his net advances, and, his services; that, as the trial court stated, "the value of the interest of Bertha Carlson in and to the property described . . . and to which the defendant obtained title, was many times greater than any consideration which the defendant furnished to the said Bertha Carlson." It was also in evidence that the properties had increased considerably in value since the defendant obtained title thereto and before Mrs. Witt's demise. In view of the seriously impaired condition of her mind and body and the short expectancy of life of Mrs. Witt known both to herself and to the defendant, the so-called agreement cannot be said to bear the ear-marks of a conscionable "trade."

Neither is there any evidence in the record that the parties were dealing at arm's length. The defendant at no time during the transactions appeared to be interested in Mrs. Witt's obtaining advice independent of his counsel. He

admitted that at no time did he suggest to her that she might do so and there is every indication that she did not consult any counsel outside of Mr. Lantz' office. The finding of the trial court that Mrs. Witt did not have any independent advice in connection with any of the transactions involved is sustained by the record. For the defendant merely to state that Mrs. Witt was free to seek independent advice had she so chosen does not sustain the burden on him of showing that the parties dealt at arm's length. A statement which is very pertinent to the case before us was made by this court in *Pomeroy* v. *Collins, supra,* at page 70: ''Surely, a transaction such as has been outlined should command the close scrutiny of a chancellor. Whether the transactions contain within themselves the seeds of an iniquitous purpose is a question solely for his conscience, and his decree will not be disturbed if there be any substantial evidence to support his conclusion, even though an opposing conclusion may find some support in conflicting or contradictory evidence.''

The trial court in the present case found that the allegation that Mrs. Witt was of unsound mind during the times involved was not true, but did find that she was weak in mind and easily influenced. This court in *Estate of Witt, supra,* doubted that the evidence sustained the jury's verdict of unsoundness of mind, but concluded that there was sufficient evidence to sustain the verdict on the grounds of fraud and undue influence. (*Estate of Witt, supra,* at p. 414.) But as suggested by this court in that case (p. 419) the evidence of weakness of mind is nevertheless illuminating on the issues of fraud and undue influence. The defendant is fearful that this court will be swayed in its conclusions by the decision in the *Estate of Witt,* and that that case on the issues of fraud and undue influence will be considered *res judicata* of the issues in the present action. We have, however, carefully reviewed the record presented here without considering the question whether the judgment in *Estate of Witt* is *res judicata* on any of the issues involved in the present case, and the record compels the independent conclusion that all of the trial court's findings are sufficiently supported by the evidence and that no prejudicial error in the rulings and orders of the court was

committed. Other points made on the case in chief do not require specific notice.

There is also an appeal from the order taxing costs made on the motion of the defendant to tax the same. The motion was granted, but further items not stricken from the bill are not objected to. Item 31 in the sum of $28 was not incurred in this action, but was incurred for photographs in the former case (*Estate of Witt, supra*), in which case it was properly taxable. The fact that it was not itemized in the former case did not, we think, justify its inclusion in the present case even if the photographs were used herein. The other items objected to appear to have been properly included.

The judgment is affirmed. The order taxing costs is modified by striking therefrom item 31 in the sum of $28. As so modified the order is affirmed.

Rehearing denied.

All the Justices present concurred.