[Civ. No. 8976. Second Appellate District, Division One.—March 11, 1935.]

A. C. BRYDONJACK, Appellant, v. EMILIE E. RIECK, Respondent.

Thomas P. Cruce for Appellant.

Don Marlin for Respondent.

ROTH, J., *pro tem.*—Appellant's assignor is an attorney at law. Respondent met the attorney socially on January 1,

1929, from which date their acquaintance flowered into friendship. The attorney called upon respondent, escorted her to cafes and clubs and accompanied her upon rides and visits to friends, all expenses involved being borne by respondent. During the period of this cordial relationship, respondent, undoubtedly impressed with the wholesome interest in her and in her business displayed by the attorney, confided in a general way her affairs and troubles to him. The attorney managed to impress respondent, not only with his sympathetic attitude, but also with his ability and the selective value thereof to such extent that on March 1, 1929, respondent signed a letter prepared by the attorney and addressed to him, in which it was recited that, the attorney is retained and appointed as respondent's chief counsel for a period of one year from date at a retainer of $3,500, plus $150 monthly salary. The letter further recites: " . . . in your position as chief counsel you are to bring and prosecute any law suits that may be started after this date, also defend any new litigation and supervise litigation now pending; also, to have a general supervisory control of my affairs." When respondent had signed, the attorney under the words "satisfactory" and "accepted" signed also. It appears, however, that prior to March 1st, respondent paid to the attorney $300 for some services the attorney was supposed to render in connection with property referred to as Corona property or Dana Point property. What the nature of these services was, however, cannot be ascertained from the record. According to the respondent, the attorney rendered no legal services to her either before or after March 1st, and after that date refused to keep appointments with her and did absolutely nothing for her. It should also be mentioned that at the time the letter was signed and prior thereto, respondent was represented by two other attorneys, who were handling her affairs in an apparently competent manner. On July 6, 1929, respondent signed another letter which was delivered to the attorney in which she says, among other things: " . . . your authority to act as my attorney, or in any manner for me or in my behalf is hereby revoked and terminated. . . . That certain instrument . . . of March 1, 1929 . . . is hereby cancelled. . . . " Further, "I am taking this action for the reason that the existing situation is unsatisfactory and it seems to me unfair. The amount of

money already paid you is, it seems to me, more than sufficient to compensate you for your services rendered to date, and this I am advised is all that you are entitled to, in view of the fact that the contract which you had me sign was not made until after the relationship of attorney and client had already existed between us for some time, and there were circumstances attending the procuring of this contract which make it ineffective."

Upon such notice of termination of contract, the record discloses no immediate action on his part; it appears that he waited until the end of the year. The year having expired and respondent remaining adamant in her· attitude as expressed in the second letter, the attorney filed suit through appellant on the contract set forth in the first letter for a balance of $3,000; $2,300 having been paid prior to the letter of cancellation.

The evidence amply supports the findings, among others, made by the trial court that: " . . . at the time of the making of said contract, defendant had no independent legal advice on said contract . . . and . . . was not familiar with the reasonable value of the legal services which she required. . . .

"That it is true that the said (attorney) was at the time of the making of said contract familiar with the condition of defendant's affairs and in possession of the requisite information to properly estimate the reasonable value of the legal services which this defendant required, but did not so' inform this defendant. . . .

"That it is not true that defendant terminated and cancelled said agreement without cause and on the contrary, that said contract was greatly in excess of the reasonable value of the legal services which defendant actually required at the time of the making of said contract or thereafter until the time of the termination and cancellation of said contract."

The only attempt made by appellant to prove the rendition of any legal services to respondent was in the cross-examination of respondent at which time respondent was interrogated as to various matters with which the attorney was supposed to have had some connection. What appellant's assignor did in connection with these matters referred to is vague. Respondent did not know and the only direct evidence of anything done after March 1st was a statement

made by respondent that the attorney did go out to see the Corona property and that she had a two-hour conference with him in his office. The attorney testified as to his name, the number of years he had practiced; that he performed all legal services requested up to July 6, 1929, and that he assigned his claim in writing to appellant, identifying his signature to the assistant. He was not cross-examined and did not take the stand in rebuttal. The only definite facts in the record, therefore, are that he took a trip to Corona and had a two-hour conference with respondent in his office.

The trial court gave judgment to the respondent and from that judgment plaintiff appeals.

The trial court found in effect that the attorney took advantage of respondent in making the contract and that the same was therefore invalid and that respondent was justified in terminating it as she did, even though the contract was not invalid as of the date of its inception.

Respondent in answer to a direct question stated that appellant's assignor did not act as her attorney prior to March 1st, yet the evidence shows that the relation of attorney and client did exist prior to the date the letter of March 1st was signed by respondent and accepted by appellant's assignor. In this respect the record shows, as already pointed out, that the attorney was paid $300 prior to March 1st and that in discussing the business and affairs of respondent, the attorney promised to obtain certain moneys due her,—from what source does not appear also to represent her in her father's estate, to get money from her former husband in a matter then in litigation and to straighten out some situation with reference to the Corona property. The record discloses, as the trial court in effect found, that respondent was incapable of attending to her affairs. All her testimony is of the most incoherent kind and her testimony constitutes practically all of the record. Under such circumstances, the mere fact that the respondent answered in the negative a question in which she was asked whether appellant's assignor acted as her attorney prior to March 1st does not at all settle the matter. The question itself calls for a conclusion, but even if it did not, it would not be binding upon the trial court.

■ No formal contract is necessary to create the relationship of attorney and client. It is the fact of relationship which is important, and not whether the contract—formal

or otherwise—preceded such relationship. (Jones on Evidence, 2d ed., vol. 5, sec. 2166.)

In view of the facts as recited, we have no difficulty in holding that the relationship of attorney and client existed between the attorney and respondent prior to the execution of the formal contract dated March 1st, and that such contract is therefore presumptively invalid. The rule with reference to contracts of this character is well summarized in *Thornley* v. *Jones*, 96 Cal. App. 219, 227 [274 Pac. 93, 96] : " 'A contract between an attorney and client for the former's compensation, entered into during the existence of the relation, is not void, although presumptively invalid, the burden of showing fairness resting on the attorney. . . . All dealings between an attorney and his client for the benefit of the former are not only closely scrutinized, but are presumptively invalid on the ground of constructive fraud and such presumption can be overcome only by the clearest and most satisfactory evidence. Not only must the attorney offer clear and satisfactory evidence that the transaction between himself and his client was fair and equitable and no advantage was taken by him, but he must also offer proof that the client was fully informed of all matters relative to the transaction and was so placed as to be able to act understandingly and to deal with the attorney at arm's length. (*Estate of Witt*, 198 Cal. 407, 419 [245 Pac. 197, 202] ; *Magee* v. *Brenneman*, 188 Cal. 562, 567 [206 Pac. 37].)' "

The attorney in the instant case has not sustained the burden of "showing fairness". In fact, he has shown nothing but that the contract was executed. It is the fact of execution alone of the contract in question upon which appellant predicates his cause, his contention in this regard being that the relationship of attorney and client did not exist at the time of the execution and that the rule quoted from *Thornley* v. *Jones, supra,* does not apply.

Appellant contends that the parties are dealing with each other at arm's length, although his contention in this respect is the only thing in the record that would lead one to such a conclusion; and that, therefore, the correct rule to apply is: "An attorney may make an enforceable contract with one about to become his client for the payment of compensation for services to be rendered, and such a

contract is not subject to the particular scrutiny of the court." (6 C. J. 735; 3 Cal. Jur. 626; *Cooley* v. *Miller & Lux,* 156 Cal. 510 [105 Pac. 981].)

In the Miller & Lux case, *supra,* at page 524, the same principle is thus stated: "Nor is it applicable to a contract by which the relation is originally created and the compensation of the attorney fixed. The confidential relation does not exist until such contract is made and in agreeing upon its terms the parties deal at arm's length. (*Elmore* v. *Johnson,* 143 Ill. 513 [32 N. E. 413, 36 Am. St. Rep. 401, 21 L. R. A. 366].)"

Conceding for the purpose of argument that the relationship did not exist at the time the contract of employment was made, and that the second rule announced, and not the first, applies to the situation here, it makes no difference in the result. Because there is no presumption of invalidity if the second rule applies, does not mean that the contract cannot be avoided at the election of either party to it if such party can show legal cause, such as fraud, noncompliance with its terms, or failure or total lack of consideration. The evidence in this case warrants a finding that there was a complete failure of consideration, and an utter failure on the part of appellant's assignor to perform any of the terms of his contract. Under such circumstances, respondent undoubtedly has the right to terminate, as she did.

Although such certainty is not required in civil cases, we do not hesitate to say that we are convinced to a moral certainty that there has been no miscarriage of justice in this case.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 8, 1935.