[Civ. No. 14307. Second Dist., Div. Three. Feb. 7, 1945.]

JEANNETTE G. DONOVAN, Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association) et al., Respondents.

---

*It is settled that the mental capacity of a person is a proper subject of expert testimony. (10 Cal.Jur. (1923) page 999, § 258.)

Homer N. Boardman, and W. H. Gregory for Appellant.

Farrand & Farrand, Leonard B. Slosson, Ross C. Fisher and Jennings & Belcher for Respondents.

DESMOND, P. J.—Plaintiff appeals from a judgment rendered in favor of defendants Security-First National Bank of Los Angeles and Assets Corporation. The action was for an accounting and the complaint alleged that a trust relationship existed between plaintiff and the defendants, that defendants had violated certain duties which they owed plaintiff as her trustee and had failed to render an accounting to her, except a certain "incomplete, untrue and incorrect statement of account." The judgment appealed from contains a preface which indicates the basis of the trial court's action, as will be seen from the following excerpt:

"The Court ordered, upon motion made by defendants, that the issues presented by the Second Defense and the Third Defense set forth in defendants' answer, be presented and tried first by the Court. Thereupon plaintiff rested without the introduction of any evidence; whereupon the defendants rested without the introduction of any oral testimony. No oral testimony having been introduced by either party, the Court ordered and directed that no Findings of Fact or Conclusions of Law were necessary or should be made.

"It appearing to the Court that the plaintiff has not served or filed an Affidavit, as required by Section 448 of the Code of Civil Procedure, denying the genuineness and due execution of the written instruments annexed to defendants' answer and referred to therein, and that plaintiff has not otherwise denied the genuineness and due execution of said written instruments; and it further appearing to the Court that said written instruments annexed to defendants' answer, and particularly those referred to in the Second and Third

Affirmative Defenses thereof, are admitted and that the written instruments referred to in the Second and Third Affirmative Defenses constitute a full and complete defense to the above entitled action.

"Now THEREFORE, it is hereby ordered, adjudged, and decreed that the plaintiff take nothing by her complaint herein [etc.]."

When the matter came on for hearing, the plaintiff moved the court for an interlocutory judgment upon the pleadings, directing the defendants to account "for the entire transaction involving the matters and things set forth in the complaint and that such accounting be made according to the rules and principles of accounting as recognized and administered by Certified Public Accountants." This motion was denied. Thereupon defendants moved for an order, which the court granted, directing plaintiff to proceed upon the issues raised by the second and third affirmative defenses. The written instruments referred to in the judgment as constituting a full and complete defense to the action were executed, according to the answer, in 1932 and 1937, respectively. The first of these, denominated a "Release" and signed by appellant and one Jack Donovan, acknowledged the receipt of $10 "and other good and valuable consideration to them in hand paid by the Security-First National Bank" and its successors and assigns, and in consideration therefor the signers to the instrument discharged the bank and its successors and assigns, including the defendant Assets Corporation, from any liability in law or in equity which they ever had "from the beginning of the world to the day of the date of these presents." This instrument was signed on May 11, 1932. The second instrument set up in the answer is an "Agreement," dated September 23, 1937, between the Assets Corporation therein termed "Corporation," the Security-First National Bank, therein termed "Bank," and the plaintiff, therein termed "Donovan," which agreement was also approved and signed by Jack Donovan. The "Agreement" recited that on November 1, 1932, plaintiff executed to the corporation a promissory note for $89,370.27, maturing May 1, 1933, with interest at 7 per cent, which note was secured by a trust deed upon three parcels of plaintiff's property (described therein), the plaintiff being the trustor, the Assets Corporation, the beneficiary, and the Security-First National Bank, the trustee; that no payments had been made by plaintiff upon the principal or

interest (which latter item, according to the answer, exceeded $30,000) and on April 20, 1937, notice of default had been filed and trustee's sale set for September 24, 1937; that plaintiff desired the corporation to continue the sale to February 1, 1938, and in consideration of the "mutual promises and covenants" contained in the agreement "and in further consideration of the sum of $1.00 in hand paid" by plaintiff, (1) the corporation and the bank agreed to continue the trustee's sale from September 24, 1937, to February 1, 1938, and (2) the Assets Corporation agreed to accept the sum of $70,000 cash, plus reimbursement of any amounts advanced for taxes and assessments, "in full settlement of the promissory note" and all obligations secured by the trust deed, "if, but only if, said sums are paid to it in full on or before January 25, 1938." The plaintiff agreed "as part of the consideration for the performance by the Corporation and Bank of the terms of this agreement" she would, on January 25, 1938 "or on payment to the Corporation of the amounts provided in Paragraph 2 hereof [*supra*], whichever event occurs first," release the defendants "of and from all claims, demands, causes of action which she may have against them or either of them, and will cause Jack Donovan, on said January 25, 1938, or on payment to the Corporation of the amounts provided in Paragraph 2 hereof, whichever event occurs first, to release Corporation and Bank of and from all claims, demands or causes of action which he may have against them, or either of them, and Donovan [plaintiff herein] agrees that coincident with the execution of this agreement, she will execute and will cause Jack Donovan to execute releases in the form set forth in Exhibits 'A' and 'B' respectively attached to this agreement and that said releases, so executed, will be deposited with Title Insurance and Trust Company with instructions to deliver said releases to Corporation and Bank on January 25, 1938, or on payment to Corporation of the amounts provided in paragraph 2 hereof, whichever event shall first occur." Pursuant to the foregoing terms, two general releases were signed by plaintiff and Jack Donovan, releasing the bank and the corporation from all liability, and these, also, were made a part of the third defense. The court, as we have stated, granted defendants' motion to have the issues tried upon the foregoing defenses and placed upon the plaintiff the burden of proceeding thereon. When plaintiff declined to offer any evidence and thereupon rested her case, the respondents

then likewise rested without the introduction of any oral testimony. It was upon this state of the record that the court awarded judgment in favor of defendants.

Plaintiff contends that the court erred in placing upon her the burden of proceeding under the second and third affirmative defense. She argues that "the pleadings show conclusively that *upon the face of the transactions* the respondents obtained 'advantages' over the appellant," and, because of the fiduciary relationship existing between the parties, the presumption arises that the transactions were entered into without consideration and under undue influence and the burden rested upon defendants to prove otherwise.

It seems advisable at this point to summarize the pleadings. The complaint alleged that a fiduciary relationship between plaintiff and the bank began on December 13, 1923, when she assigned to it her interest, as lessor, in a 99-year lease on her Sunset Boulevard property, which relationship "at all times" continued, the bank managing her property "as trustee," and collecting rents, the amounts of which were unknown to her; that from December 13, 1923, to November 1, 1932, she entered into various financial transactions with the bank, borrowing substantial sums of money and securing her indebtedness with mortgages upon her Sunset Boulevard, Brentwood and Santa Monica properties, specifically described in the complaint and, as additional security, assigning a $29,000 note. The complaint alleges, further, that after June 28, 1928, the Assets Corporation was the "alter ego" and agent of the bank and that it, too, "at all times continued" a relationship of personal confidence with plaintiff; that on January 1, 1929, the two defendants, with her consent, managed her Sunset Boulevard and Brentwood properties, as well as certain personal property, "as trustees," collecting the rents, the amounts of which were unknown to her; that on October 31, 1931, the assignees of the lessees of the leasehold estate conveyed to the bank their interest in the leasehold estate, together with possession, and that the bank has "ever since continuously occupied the same," all of which was concealed from the plaintiff until about March 1, 1939; that on May 6, 1932, defendants acquired possession of certain personal property while administering plaintiff's business affairs valued at $3,000; that on November 1, 1932, she signed a renewal promissory note in the sum of $89,370.27, represented to her to be her indebtedness to the bank, which note was payable to the First

Securities Co., (now Assets Corporation), due May 1, 1933, with interest at 7 per cent, and as security therefor she signed a Declaration of Trust, No. B-155, which conveyed the legal title to her Sunset Boulevard, Brentwood and Santa Monica properties to the bank, in trust only, and for which transactions she alleged she received "no money, property or other present consideration"; that thereafter the defendants "continued" their management of the property "as trustees," and "continued the collection of rents, the amount being unknown to plaintiff"; that defendants "at all times" failed to render her an account, except a "certain incomplete, untrue and incorrect statement of account presented to her on March 1, 1939," specifically setting out the particulars of said account claimed to be irregular or objectionable, also that she was wrongfully charged with certain expenditures, some of which she claimed were useless and unnecessary. On information and belief she alleged that on February 1, 1939, the profits from the operation of her properties exceeded the expenses.

In answer to the complaint, defendants denied that the bank "at all times" from December 13, 1923, "continued" a fiduciary relationship with plaintiff and alleged that the relationship "ceased long prior to the commencement" of the action; they admitted "that at times" during the period from December 13, 1923, to February 1, 1938, the bank collected the rents, but "at other times" plaintiff and Jack Donovan collected the rents, managed the property and occupied it; that the bank accounted and paid over to plaintiff her share of all rents and profits accruing from the property, or applied the same with her consent to the maintenance and upkeep of the property and payment of debts which she from time to time owed the bank; they denied that the amounts received by the bank were unknown to plaintiff; they denied that the Assets Corporation was the "alter ego" or agent of the bank, and admitted that the bank and the Assets Corporation "did at times" collect rents from the property, but denied that the amounts were unknown to plaintiff, and alleged that an accounting had been made to her; they denied that the deed from the assignees of the lessees of the leasehold estate was without plaintiff's knowledge or that the transaction was concealed from her at any time; they denied that the bank then entered into possession and "ever since continuously" occupied it, but on the contrary alleged that plaintiff entered into possession

of the premises following the execution of the deed and remained in possession for certain periods of time thereafter; they denied the allegations of the complaint respecting the personal property of plaintiff; they denied that plaintiff received no consideration for the execution of the $89,370.27 note and the Declaration of Trust; they denied that upon the execution of the Declaration of Trust they "continued" their management of plaintiff's property, mentioned in the complaint, but alleged that "at times" prior to the execution of the Declaration of Trust plaintiff and Jack Donovan were in possession and management of the properties, and admit that upon the execution of the Declaration of Trust that defendant Assets Corporation went into possession and management of "a portion" of the real property and "at times" collected rents from certain of said properties, but denied that the bank collected rents from the property after the Declaration of Trust; they denied that the amounts were unknown to plaintiff and alleged she was "informed" and an "accounting" made to her; they denied that the statement of account was "incomplete or untrue or incorrect" in the particulars alleged in the complaint; they denied that the profits from the operation of plaintiff's property exceeded the expenses. In addition to the second and third affirmative defenses, set forth above, the answer also contained eight additional special defenses, including laches, statute of limitations, estoppel and account stated. Considering the pleadings heretofore reviewed, we are satisfied that the court properly denied plaintiff's motion for an interlocutory decree of accounting.

That the court had power to order the case tried first upon the two affirmative defenses cannot be questioned, for the order of proof may be regulated by the trial court in its discretion (Code Civ. Proc., § 2042). Where, as here, no abuse of discretion appears, the order of the trial court may not be disturbed on appeal (24 Cal.Jur. 764). Since the instruments relied on in the second and third affirmative defenses were set out in the pleadings, and since they were not denied by plaintiff in an affidavit as provided in section 448 of the Code of Civil Procedure, their genuineness and due execution must be deemed admitted for all purposes of the trial, the effect of the failure to file the affidavit being to admit that the instruments were what they purported on their face to be, and that they were executed and delivered by the par-

ties who signed them, in the capacity in which they appeared. (21 Cal.Jur. 168 and cases cited therein.) ■ Since, also, the releases were in writing they were presumptive evidence of a good and sufficient consideration (Code Civ. Proc., § 1963, subd. 39), and the burden of showing want of consideration would rest upon the party seeking to invalidate them upon that ground (Civ. Code, § 1615), in this case, the plaintiff. ■ In addition to the presumption of consideration arising from the instruments themselves, defendants' position is aided and strengthened by other presumptions, namely, that private transactions have been fair and regular, that a person intends the ordinary consequences of his voluntary act, and that the ordinary course of business has been followed (Code Civ. Proc., § 1963, subds. 19, 3 and 20, respectively). These presumptions are disputable (Code Civ. Proc.,. § 1963), but when undisputed they have the effect of establishing a prima facie case (10 Cal.Jur. 784), even without the formal introduction into evidence of the original documents (*Knight* v. *Whitmore* (1899), 125 Cal. 198, 200 [57 P. 891], and cases cited therein), and operate to shift the burden of introducing evidence (10 Cal.Jur. 782). ■ While ordinarily the burden of proving an issue raised by an affirmative defense rests upon the defendant (Code Civ. Proc., § 1981), there is an exception to this rule where the defense is founded on a written instrument which is set out in the answer and where its genuineness and due execution are admitted (24 Cal.Jur. 774). An enlightening dissertation upon the subject of ''Burden and Degree of Proof'' is found in 10 California Jurisprudence 782 et seq. ■ The defendants in the present proceeding had made out a prima facie case and, under the principles stated in the treatise to which we have just referred, they were at liberty to rest, at least until sufficient proof to counterbalance the presumptions raised by the written instruments had been offered and presented by the plaintiff (*Scott* v. *Wood* (1889), 81 Cal. 398, 401 [22 P. 871]), including proof of fraud, mistake, undue influence, compromise, payment, the statute of limitations, estoppel and mental incompetency (21 Cal.Jur. 168). ■ It is appellant's contention that the presumption created by section 2235, Civil Code, prevails over the presumptions which arise under the pleadings in this case, but this argument was satisfactorily answered in the negative in *Es-*

*tate of Roberts* (1942), 49 Cal.App.2d 71 [120 P.2d 933], the court stating (p. 80) : "In support of the judgment respondent relies entirely on the presumption of undue influence, which, as he claims, arises from the relationship of the parties, and cites section 2235 of the Civil Code in support of his argument. That section provides: 'All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence.' Here we have a written instrument, a promissory note, which erects a counter-presumption of a sufficient consideration (Code Civil Proc., sec. 1963, subd. 21; Civil Code, secs. 1614, 3105) ; and the burden of showing a want of such consideration is on the party seeking to invalidate the instrument. (Civil Code, sec. 1615.) The presumption created by section 2235 of the Civil Code does not overcome this other presumption *unless it is shown that the relationship was used by the trustee to obtain an unfair advantage.* [Italics added.] (*Dimond* v. *Sanderson* (1894), 103 Cal. 97, 101, 103 [37 P. 189] ; *Cole* v. *Wolfskill* (1920), 49 Cal.App. 52, 55 [192 P. 549] ; *Estate of Mallory* (1929), 99 Cal.App. 96, 102 [278 P. 488].) "

The instruments relied upon by the defendants do not, of themselves, indicate that defendants have obtained an "unfair advantage," and, in view of the presumptions which we have mentioned, in favor of the defendants, mere allegations of abuse of a fiduciary relationship, denied by defendants, cannot take the place of evidence. The case of *Allen* v. *Meyers* (1936), 5 Cal.2d 311 [54 P.2d 450], invoked by appellant as authority for her position that the burden of proof was upon the defendants, has no application to the instant cause, for there the plaintiffs offered evidence to prove that the trustee had obtained an unfair advantage and, in that situation, the burden was upon the one claiming through the trustee to satisfy the court that the transaction was supported by a sufficient consideration and was not the result of fraud or of undue influence exercised by the trustee upon his beneficiaries. Under the circumstances of the case at bar, the trial court properly rendered judgment in accordance with the presump-

tions, there being no legal evidence offered to overcome them (Code Civ. Proc., § 1961).

The judgment is affirmed.

Wood (Parker), J., and Fox, J. pro tem., concurred.

A petition for a rehearing was denied March 5, 1945.