[L. A. No. 22715. In Bank. June 29, 1954.]

ANN SMITH BRADNER, as Executrix, etc., Appellant, v. LEANDRO J. VASQUEZ et al., Respondents.

Thomas A. Wood and Michael F. Shannon for Appellant.

Burke, Williams & Sorensen and Landon Morris for Respondents.

SPENCE, J.—B. J. Bradner, an attorney at law, commenced this action against defendants for money alleged to be due on a contract of employment entered into during the existence of the attorney-client relationship. On a prior appeal, it was held that the second amended complaint stated facts sufficient to constitute a cause of action. (*Bradner* v. *Vasquez*, 102 Cal.App.2d 338 [227 P.2d 559].) Bradner

died prior to trial and his wife, as executrix, was substituted as plaintiff. Judgment was entered for defendants, from which plaintiff appeals. The trial court found, among other things, that the contract was procured without sufficient consideration and by undue influence, in that at the time of its execution the relationship of attorney and client existed and Bradner obtained an advantage by it. A review of the record and applicable legal principles sustain the judgment of the trial court.

On November 14, 1941, Bradner and the defendants entered into the following written agreement:

"November 10, 1941

"Mr. and Mrs. Anselmo M. Vasquez
3161 Winter Street
Los Angeles

"Dear Mr. and Mrs. Vasquez:

"Relative to our conversation of recent date, it is my understanding that we agreed as follows:

"I am to attend to all of your business affairs connected with the Ohio Oil Company and Havenstrite Operator, together with preparing income tax returns and advice as to investments, for 10% of all the moneys received by you from the Ohio Oil Company and Havenstrite Operator for oil and from casinghead gasoline and dry gas.

"It is realized by me that my compensation in the near future will be rather small, but as more wells are developed, I will be more adequately compensated.

"It is understood that this arrangement shall cease and determine upon my death.

"Will you kindly sign the duplicate copy of this letter and return it to me.

"Very truly yours,

"B. J. Bradner
"B. J. Bradner

"Accepted

"Anselmo M. Vasquez
"Anselmo M. Vasquez
"Bertha R. Vasquez
"Bertha R. Vasquez"

In August, 1949, defendants discharged Bradner from his employment and notified him that they would no longer make any payments pursuant to the contract. Up to the time of

discharge, Anselmo and Bertha Vasquez had paid to Bradner all sums of money provided to be paid under the terms of the agreement.

From 1924 to November 14, 1941, the time the agreement was entered into, Bradner had performed all legal services that defendants had required. In 1937, defendants entered into a lease with the Ohio Oil Company. Bradner represented defendants in this transaction and also represented defendants in connection with the sale of some oil royalties. Ohio started to drill in 1940 and brought in one well in late 1941. Mrs. Vasquez testified that in November, 1941, she and her husband went to Bradner's office to discuss with him matters relative to compensation in handling their affairs. According to her testimony, Bradner asked them how they wanted to compensate him. He asked if they wanted to give him a percentage of their interest in the wells, or to pay him 10 per cent of the total income from the oil property. Defendants told him, "We will pay you 10%. That way you will take more interest in seeing that more wells are drilled on the property." It is not certain from the testimony whether defendants or Bradner first suggested 10 per cent of the oil income as the amount of compensation, but in any event, this arrangement was agreeable to Bradner. Mrs. Vasquez further testified that Bradner did not say anything to them about going to see another lawyer or tell them to get advice from anyone else about signing the agreement. Nor did Bradner at any time before the signing of the agreement say anything about what would be the reasonable value of the services which he agreed to perform.

Mrs. Bradner was secretary for her husband from 1929 until his death. She testified that she was present at the conversation referred to by Mrs. Vasquez. At this conversation, which took place on November 7, 1941, Mr. Vasquez told Bradner that he was very well satisfied with the work he had done. The Vasquezes hoped they could work out an arrangement whereby Bradner would handle all legal and financial problems in connection with the Ohio leases and would be paid out of the proceeds from the oil property. Bradner said that in some cases his clients had assigned to him a 1 per cent royalty. To this, Mrs. Vasquez said, "Mr. Bradner, we don't want to do that because if you died we don't want a stranger in there." Bradner said, "Well, suppose that you give me ten per cent for life of all the oil, gas, and casinghead gasoline, and that would amount

to just about the same thing." Bradner continued, "Of course, I realize at first I won't be very well paid for my work but as more wells are developed, I will be better paid." The agreement in dispute was dictated and mailed by Bradner a few days after the above conversation with the Vasquezes. Shortly thereafter, Mr. and Mrs. Vasquez signed a copy and returned it to Bradner, retaining a copy for themselves.

Civil Code, section 2235, provides: "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence." Civil Code, section 2219, provides that everyone who voluntarily assumes a relation of personal confidence with another is deemed a trustee. ■ Section 2235 has often been applied to contractual dealings between attorney and client because it is recognized that this relationship is one of a strict fiduciary and confidential nature. (*Cooley* v. *Miller & Lux,* 156 Cal. 510, 523-524 [105 P. 981] ; *Metropolis Trust & Sav. Bank* v. *Monnier,* 169 Cal. 592, 598 [147 P. 265] ; 6 Cal.Jur.2d 306, § 137.) If the specified basic facts are established the contract is voidable. (*Magee* v. *Brenneman,* 188 Cal. 562, 571 [206 P. 37] ; *Brydonjack* v. *Rieck,* 5 Cal.App.2d 219, 223 [42 P.2d 336].) ■ In order to bring the presumptions of insufficient consideration and of undue influence into operation, it is necessary to show that a confidential relationship existed and that this relationship was used by the fiduciary to gain an advantage.

It is plaintiff's contention that the advantage gained by the fiduciary must be an unfair advantage before the presumptions of section 2235 are properly in the case. We find no language in this section which imposes such an additional requirement. There are certain cases which apparently do require an unfair advantage. (*Dimond* v. *Sanderson* (husband and wife), 103 Cal. 97 [37 P. 189] ; *Patterson* v. *Davis* (husband and wife), 121 Cal.App.2d 152, 159 [262 P.2d 601] ; *Donovan* v. *Security-First Nat. Bank* (trustee and beneficiary), 67 Cal.App.2d 845, 853 [155 P.2d 856] ; *Estate of Roberts* (business advisor), 49 Cal.App.2d 71, 80 [120 P.2d 933] ; *Estate of Mallory* (attorney and client), 99 Cal. App. 96 [278 P. 488] ; *Cole* v. *Wolfskill* (physician and patient), 49 Cal.App. 52 [192 P. 549].) Certain other decisions use the words advantage or advantageous as synonymous

with the phrases unfair advantage or inequitable transaction. (*Estate of Witt* (attorney and client), 198 Cal. 407, 419, 422 [245 P. 197]; *Carlson* v. *Lantz* (attorney and client), 208 Cal. 134, 138-139 [280 P. 531].) There are, however, numerous cases which have discussed virtually all types of fiduciary and confidential relationships and which properly require only an advantage. We believe that these cases, of which the following are illustrative, are in accord with the language of section 2235. (*Weil* v. *Weil* (husband and wife), 37 Cal. 2d 770, 788 [236 P.2d 159]; *Fish* v. *Security-First Nat. Bank* (advisor), 31 Cal.2d 378, 384 [189 P.2d 10]; *Marlenee* v. *Brown* (attorney and client), 21 Cal.2d 668, 680 [134 P.2d 770]; *Johnson* v. *Clark* (sisters), 7 Cal.2d 529, 534 [61 P.2d 767]; *Smith* v. *Lombard* (husband and wife), 201 Cal. 518, 524 [258 P. 55]; *Clark* v. *Millsap* (attorney and client), 197 Cal. 765, 783 [242 P. 918]; *Magee* v. *Brenneman* (attorney and client), *supra,* 188 Cal. 562; *Estate of Cover* (husband.and wife), 188 Cal. 133, 143 [204 P. 583]; *McDonald* v. *Hewlett* (attorney and client), 102 Cal.App.2d 680, 686 [228 P.2d 83]; *Jorgenson* v. *Pardee* (husband and wife), 101 Cal.App.2d 96, 97 [224 P.2d 884]; *Plxweve Aircraft Co.* v. *Greenwood* (attorney and client), 61 Cal.App.2d 21, 24 [141 P.2d 933]; *Estate of De Barry* (attorney and client), 43 Cal.App.2d 715, 728 [111 P.2d 728]; *Shahabian* v. *Najarian* (attorney and client), 14 Cal.App.2d 435, 444 [58 P.2d 396].)

When a fiduciary enters into a transaction with a beneficiary whereby the fiduciary's position is improved, or he obtains a favorable opportunity, or where he otherwise gains, benefits, or profits, it may fairly be said that an advantage has been obtained. To declare that the advantage obtained must be shown to be unfair, unjust, or inequitable before the presumptions arise would result in the imposition of a condition which is not required by section 2235.

There was evidence from which the court could reasonably conclude that Bradner obtained an advantage from the Vasquezes by the contract at the time it was made. From 1924 to the date of the agreement, Bradner had been the Vasquezes' attorney. Because they did not have a great deal of money during this period, "he charged them the minimum, or just enough to cover the overhead." Bradner did some work for which no charges at all were made. Under the agreement, however, Bradner was to receive 10 per cent of all moneys received by the defendants from the Ohio and Haven-

strite lease for the remainder of his life. At the time the agreement was entered into, the Vasquezes were receiving $300 or $400 per month and there was every prospect that this amount would increase over the years. Prior to the making of the contract, the Vasquezes could dismiss Bradner as their attorney at any time, with or without cause. After the agreement, the defendants could discharge Bradner only for legal cause. Since this evidence establishes the existence of an advantage, it follows that the presumptions specified in section 2235, that is, the presumptions of insufficient consideration and undue influence, are present in this case.

Plaintiff therefore cannot prevail in her contention that judgment for defendants is not supported by the evidence. It is true that there was no direct evidence of intentional undue influence. However, the presumption of undue influence is evidence and it is sufficient to sustain the judgment although there may be direct evidence contrary to the presumption. (Code Civ. Proc., §§ 1957, 1961; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529]; *Westberg* v. *Willde*, 14 Cal.2d 360, 365 [94 P.2d 590].) Section 1957 of the Code of Civil Procedure states that presumptions are indirect evidence; and section 1961 of the Code of Civil Procedure states that a disputable presumption may be controverted by other evidence, direct or indirect, but unless so controverted the jury must find according to the presumption.

Plaintiff presented evidence tending to show that there was no undue influence, but we cannot say as a matter of law that the presumption of undue influence was overcome by such evidence. Plaintiff's evidence indicated that the Vasquezes had suggested the long-term agreement which the parties executed. Plaintiff testified that Mr. Vasquez had said, "In time this [arrangement] will give you something more for the work you have done in the past, as well as for work to come." The evidence in the case also indicated that the Vasquezes were completely satisfied with the agreement at the time it was made, since it would mean that Bradner would take a greater interest in the property because of his financial concern. Such evidence of plaintiff, tending to show that there was no undue influence, conflicts with the presumption of undue influence. The fact that defendants never had any independent advice is also a circumstance of undue influence. (*Brown* v. *Canadian Ind. Alcohol Co.*, 209 Cal. 596, 599 [289 P. 613]; *Burnham* v. *Witt*, 217 Cal. 397, 398 [18 P.2d 949]; *Munfrey* v. *Cleary*, 75 Cal.App.2d 779, 785 [171

P.2d 750].) Thus the record presents the familiar picture of conflicting evidence upon the disputed issues which were to be determined. The trial court found that there was undue influence, and since this finding is supported by the evidence, it will not be disturbed on appeal.

Since the judgment may be sustained solely upon the above basis, we need not discuss the effect of an apparent conflict between the presumptions of sufficiency and insufficiency of consideration. (Code Civ. Proc., § 1963, subd. 39; Civ. Code, § 2235.)

The judgment is affirmed.

Carter, J., and Bray, J. pro tem.,* concurred.

TRAYNOR, J.—I concur in the holding of the majority opinion that the evidence of an advantage gained by plaintiff's testate is sufficient to give rise to the presumptions of undue influence and insufficient consideration mentioned in section 2235 of the Civil Code and that the evidence considered as a whole does not as a matter of law dispel the presumption of undue influence. I cannot agree, however, with the statement, and the implications flowing therefrom, that these presumptions are evidence. (See dissenting opinions in *Speck* v. *Sarver*, 20 Cal.2d 585, 590 [128 P.2d 16], and *Scott* v. *Burke*, 39 Cal.2d 388, 402 [247 P.2d 313].)

Edmonds, J., concurred.

SCHAUER, J.—I dissent.

In my view the theory under which the presumption stated in section 2235 of the Civil Code is applied in this case is unsound and I fear that the apparently unfair and inequitable results which it leads to here may be paralleled many times among honorable members of an honored profession. I would apply the presumption only where it is shown, i.e., is at the least inferable from the circumstances, that the attorney obtained an "advantage" over the client as distinguished from the normal benefits of a fair transaction. (See *Estate of Witt* (1926), 198 Cal. 407, 419-422 [245 P. 197]; *Carlson* v. *Lantz* (1929), 208 Cal. 134, 138-139 [280 P. 531].)

The declaration of the statute (Civ. Code, § 2235) is that "All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by

---

*Assigned by Chairman of Judicial Council.

the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence.'' The operation of the presumption is thus by its specific language made dependent upon the obtaining of an ''advantage,'' not the obtaining of a profit or benefit. Unless the words ''advantage,'' ''profit,'' and ''benefit'' are synonymous—or this court enlarges the meaning of ''advantage'' to make it synonymous with ''profit'' and 'benefit''—I think the statute can have no operation in this case.

Webster's New International Dictionary, second edition, defines ''advantage'' as meaning ''1. The condition of being in advance or superior; superiority of state or position; . . . 4. That which is gained from superiority of state or position . . .'' To me, the definitions quoted, and the usage of that particular word, exclusively, in the statute suggest that the Legislature intended—if, as is hereinafter mentioned, it intended at all that this section should be applied to the relationship of attorney and client—that the ''advantage'' upon which the presumption would become operative in respect to the dealings between an attorney and his client should be something more than the mere benefit of a fair profit, i.e., something more than an enforceable promise to pay a fair consideration for services faithfully rendered.

Certainly the relationship of attorney and client, when established, becomes fiduciary in character, but nevertheless realism requires that we recognize that there are actual differences between the carrying on of the private practice of law, which presumptively is for the benefit of the lawyer in all cases as well as for the benefit of his clients in their respective cases, and the administration of a trust estate by the trustee who holds legal title to property and has the duty of managing it exclusively for the benefit of the *cestuis que trust*. Every act of the trustee, including the fixing of his compensation, is subject to authorization or approval by the court and he can be removed or replaced by the court. The meaning of ''advantage'' as applied to the act of one who is both historically and technically a trustee may well be different in scope or at least as to occasions of application from its proper meaning when applied to a lawyer practicing his profession.

Law is a profession, but to successfully practice law one must successfully engage in business—business conducted upon the lofty standards and conforming to the ethical principles

of the profession, but nonetheless business engaged in for profit. The services of a competent lawyer fairly engaged and faithfully rendered should benefit and profit both lawyer and client. It is unfair to the fine men and women of the profession and it tends to open, not to close, the door to fraud, to hold that a presumption of unfairness, fraud and undue influence arises from a fair transaction merely because a lawyer gains the benefit of compensation for his services.

In this country with its traditions of private initiative and free enterprise it is contemplated that, as is only natural and just, every business transaction is entered into by each party for the purpose of benefiting himself, i.e., of obtaining a commodity or some form of wealth, whether it be goods or services or other benefit, which he wishes to receive in exchange for whatever he himself has to offer in return. Here the attorney, Bradner, on proper request, offered and gave his services in return for a stipulated payment to be made by defendants; each party was to obtain a benefit from the other. There is no contention that the contract was not understood or that it did not state correctly the terms the parties intended. Defendants received the full benefit of their bargain, and it was only when their affairs had prospered and Bradner began to be compensated "more adequately"— as had been expressly contemplated when the contract was executed—that they sought to escape performance of their own obligations.

Under the circumstances which have been related, and in the total absence of a showing that the defendants did not freely and knowingly enter into the contract or that Bradner did not perform the services contemplated, I think the presumption of section 2235 should be held inapplicable, and the judgment reversed.

Shenk, Acting C. J., concurred.