[S. F. No. 9768. In Bank.—October 24, 1923.]

## PACIFIC MILL & TIMBER COMPANY (a Corporation), Appellant, v. MASSACHUSETTS BONDING & INSURANCE COMPANY (a Corporation), Respondent.

[1] Sureties—Joint and Several Obligation—Failure of Principal to Sign—Liability of Surety.—A joint and several surety bond, given as security for the faithful performance of the terms and conditions of a certain contract, is binding upon the surety, notwithstanding such bond is not executed by the principal,

where the latter has signed the main contract and thereby assumed the same obligations and liabilities as covered by the bond.

[2] Id. — Delivery Without Signature — Constructive Notice of Conditions Attached—Inferences.—Such bond being good without the signature of the principal, when it was delivered to the obligee without the principal's signature the obligee was not charged with constructive notice of any condition attached to its execution by the surety—the natural inference which the obligee would draw under the circumstances being that the principal's signature was omitted because it was not necessary.

[3] Id.—Interpretation of Contract of Suretyship.—A bond given to secure the faithful performance of the terms and conditions of a certain contract is a contract of suretyship and, under section 2837 of the Civil Code, must be interpreted in accordance with the same rules as are observed in the case of other contracts.

[4] Id.—Conditional Delivery — Finding—Evidence.—In this action upon a bond given to secure the faithful performance of the terms and conditions of a certain contract, the finding of the trial court that the surety signed the bond but did not deliver it, which finding was made on the theory that although the bond did physically pass from the surety through its principal to plaintiff there was no absolute delivery, but only a conditional delivery dependent upon the execution of the bond by said principal, was not supported by the evidence and could not be sustained as a matter of law.

[5] Id.—Conditional Signature by Surety — Notice to Obligee—Liability.—Where a surety signs a bond on condition that the principal also signs it, but the obligee has no notice, actual or constructive, of such condition, the surety is bound, especially if, upon learning of the nonperformance of that condition, he does not raise any objection; and where a bond is good without the signature of the principal, and the surety's recourse against him is 'in nowise impaired by his failure to sign, the fact that the surety signed the bond on the express condition that the principal should also sign is no defense to an action thereon.

[6] Id.—Splitting Up of Draft — Alteration of Contract — Release of Surety.—The main contract, for the faithful performance of which the bond was given as security, having provided for the issuance of a draft, in favor of the principal, in a given amount, payable at a specified time and upon specified terms, the splitting up of such draft into four smaller drafts aggregating the same amount, payable at the same time and upon the same

2. Effect of delivery of bond unsigned by principal obligor, notes, 40 Am. St. Rep. 51; 12 L. R. A. (N. S.) 1105.

terms, did not constitute a material alteration of the contract, so as to release the surety.

[7] Id.—Crediting Draft to Plaintiff's Account—Failure to Deliver Lumber—Nonperformance of Contract.—The lumber company having been required under the main contract to deliver certain lumber to plaintiff and to place to the credit of the latter the difference between the amount of its draft on plaintiff and the contract price of such lumber, merely placing the entire amount of the draft to the credit of plaintiff on the books of the lumber company did not constitute performance by the latter so as to release the surety from liability.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George E. Crothers, Judge. Reversed.

The facts are stated in the opinion of the court.

Sterling Carr for Appellant.

Thomas, Beedy & Lanagan and Hartley F. Peart for Respondent.

SEAWELL, J.—A hearing was granted by this court after decision by the district court of appeal, first appellate district, division two, for the purpose of construing the contract out of which the obligation of suretyship springs in its entirety and also for the purpose of making a more extended statement of the law and its application to the facts of the instant case. We adopt, however, as the law of the case the following portion of Mr. Justice Nourse's opinion:

"This is an action on a bond given to guarantee the faithful performance of a contract. The trial court gave judgment for defendant after finding that the bond was not signed by the principal or delivered to plaintiff and that there was a material change in the terms of the agreement to the detriment of the defendant.

"A brief statement of the facts will suffice: On January 25, 1917, plaintiff and the McKenzie Company (a corporation) executed a written contract whereby plaintiff agreed to take the total output of lumber from a certain mill leased and operated by the McKenzie Company. A second paragraph was incorporated in the contract wherein, as part

performance, plaintiff placed with the McKenzie Company an order for 25,000 redwood ties and not less than fifteen carloads of other lumber according to specifications to be furnished later. Contemporaneously therewith plaintiff accepted a draft drawn upon it by the McKenzie Company in the sum of $6,500 as payment on account for the ties and carloads of other lumber mentioned. It was stipulated that if this sum was insufficient to pay for all the lumber covered by the order, the plaintiff would immediately pay the balance; on the other hand, if this sum was in excess of the amount of lumber delivered, such excess should be placed to the credit of the plaintiff. The bond in suit was given to secure the faithful performance of the terms and conditions of paragraph 'second' of the contract. It was duly executed by the authorized agent of the bonding company and by him delivered to Mr. Cutten, with instructions to cause the corporation to sign as principal and to then deliver the bond to the plaintiff. Cutten delivered the bond to the plaintiff without the signature of the McKenzie Company, but the absence of the principal's signature was not discovered by the plaintiff until this case was set for trial. The McKenzie Company drew its draft on the plaintiff for $6,500, as provided for in the contract, and this was accepted by the plaintiff. A few days later the McKenzie Company represented to the plaintiff that it was unable to negotiate the draft and it thereupon secured from the plaintiff four smaller drafts covering the same sum. These four drafts were negotiated to innocent purchasers for value before maturity by the McKenzie Company and were all paid by the plaintiff at maturity, at which time the plaintiff knew that the McKenzie Company had failed in its contract and that it was insolvent.

"It was stipulated in the bill of exceptions that the McKenzie Company wholly failed to deliver to the plaintiff at any time any portion of the lumber ordered by and under the contract, and that, within the time fixed in the contract for delivery the plaintiff, relying on its contract, executed agreements for the reselling of the lumber, but, because of the default of the McKenzie Company, the plaintiff was compelled to purchase lumber and ties in the open market to fulfill its agreements, to the damage of plaintiff in the sum

of $1,172. The action is one to recover the two sums of $6,500 and $1,172.

"The appeal is based upon three grounds: (1) The insufficiency of the evidence to support the finding that the bond was not properly executed and delivered; (2) the insufficiency of the evidence to support the finding that in cutting up the $6,500 draft the parties had materially changed the terms of the principal agreement; (3) errors of law in the admission of evidence of the instructions and intentions of the surety relative to the execution of the bond.

"Upon the first point appellant argues that the bond is binding upon the surety, regardless of the fact that it was not signed by the principal, because it is a joint and several obligation and the principal is bound by the terms of the main contract which the bond was given to secure, and because the surety constituted Cutten its agent to deliver the bond to the appellant and is, therefore, bound by the acts of its agent. The respondent insists that its liability was conditional upon that of the principal; that it was not a completed bond because the principal failed to sign, and that it was the intention of the surety, evidenced by the instrument itself and by the testimony taken at the trial, that the bond should not be effective and should not be delivered until such signature had been affixed.

[1] "The contention of the appellant that the bond is binding without the signature of the principal must be sustained. It is a joint and several obligation guaranteeing the faithful performance, by the principal, of the terms and conditions of the main contract. This contract obligated the principal to perform certain specified acts and to comply with certain specified terms and conditions. The principal signed the main contract and thereby assumed the same obligations and liabilities as those covered by the bond. Its signature upon the bond would have added nothing to either its obligation or its liability. (*Kurtz* v. *Forquer*, 94 Cal. 91, 93 [29 Pac. 413].)

"Respondent directs our attention to *Sacramento* v. *Dunlap*, 14 Cal. 421, and *People* v. *Hartley*, 21 Cal. 585 [82 Am. Dec. 758], holding that a surety is not bound unless the principal has executed the bond. But both of these cases related to bonds which were joint and not joint and several. Reference is also made to *Weir* v. *Mead*, 101 Cal. 125 [40

Am. St. Rep. 46, 35 Pac. 567]. But the bond under consideration in that case was an executor's bond given under section 1388 of the Code of Civil Procedure, which required an executor to 'execute a bond to the state of California, with two or more sufficient sureties.' The court held that the meaning of this section was that 'the principal and sureties must sign the bond before letters can be issued, for obviously there can be no execution without signing.' (101 Cal. 128 [40 Am. St. Rep. 46, 35 Pac. 567].) As the bond under consideration was the joint obligation of the principal and sureties and the several obligation only of the latter, it was held that it was ineffectual for any purpose without the principal's signature. Respondent cites many other cases from outside jurisdictions holding that where a principal has failed to sign the bond it is necessary to show that the sureties intended to be bound, notwithstanding the failure of the principal to sign. Many of the cases cited do not go as far as respondent contends, and none of those examined cover a case where the bond is given as security for the faithful performance of a contract which the principal has already executed.

"There is a wide divergence of opinion among the various jurisdictions upon the point under consideration, but this conflict of authority seems to arise mainly from the failure of some courts to emphasize the distinction between joint and several obligations and those which are joint only. No California case is directly in point. *Kurtz* v. *Forquer, supra,* comes nearest to a case involving a similar state of facts. Though some elements arose in that case which are not present here, the rule stated in the syllabus (and this is supported by the decision) is in line with the weight of the authorities. This is that a joint and several bond, conditioned for the faithful performance by the principal named therein of the contract which the principal has already signed, is binding upon the sureties though the principal has failed to sign the bond. The following statement found in 32 Cyc., p. 41, is a correct summary of the weight of authority on the point under discussion: 'The better rule seems to be that when the failure of the principal to sign the instrument affects the surety injuriously, the surety is not bound. But when the failure of the principal to sign the instrument in no way affects the rights or liability of

the surety, the instrument is valid, and the surety is bound, unless the surety signed upon the express condition that the principal should also sign before delivery of the instrument to the obligee, or the statute absolutely requires the principal to sign. Thus, where the liability of the principal in a bond is fixed by contract, or by operation of law, his failure to sign the bond does not affect the liability of his sureties thereon.'

"Assuming for the moment the correctness of the rule of those cases which hold that, where a bond is not signed by the principal, the burden of proof is on the obligee to show that it was *not* executed by the sureties on the express condition that they would not be bound unless the principal signed, the better rule is, as stated in 32 Cyc., p. 45: 'So, where a bond is good without the signature of the principal, and the sureties' recourse against him is in nowise impaired by his failure to sign, the fact that the sureties signed the bond on the express condition that the principal should also sign is no defense to an action thereon.'

"As we have said, the principal was already bound by the execution of the main contract. Its signature upon the bond could not have affected either its rights or its liabilities concerning either the obligee or the surety. The bond was one, therefore, which was good without the signature of the principal.

[2] "Such being the case, when the bond was delivered to the obligee without the principal's signature, the obligee did not have constructive notice of any condition attached to its execution by the surety. The natural inference which the obligee would draw under the circumstances would be that the principal's signature was omitted because it was not necessary. Holding as we do on this point, it is unnecessary to consider the assignments of error to the admission of evidence of the intentions of the surety as it is conceded that none of these matters were communicated to the appellant. The same may be said as to the finding of nondelivery. This was not a finding of fact—actual delivery being conceded—it was the conclusion of the trial court based upon the finding that the surety's execution of the bond was conditional.

"On the second point the appellant insists that, assuming that there was a material alteration of the agreement when the $6,500 was cut into four smaller drafts, the finding of

the trial court does not sustain the judgment because the issue was not properly raised. The point is that, when a party claims exoneration under section 2819 or section 2840 of the Civil Code by reason of the suspension or impairment of his rights, he must allege the facts which are the basis of the claim. Here the answer, after setting forth the facts relating to the issuance and acceptance of the four drafts, alleged: 'That in making the payment of said drafts as herein alleged the rights of this defendant were prejudiced to the extent of the amount of the total sum of said drafts.'

"In a similar case relating to a plea of exoneration the supreme court, in *Blackwood* v. *McCallum*, 187 Cal. 655, 659 [203 Pac. 758, 759], said: 'The answer wholly failed to plead any facts showing that the original contract had been modified in a material or in any respect. . . . If appellants claimed that a different contract had been entered into . . . they should have stated its covenants and conditions. . . . In short, the appellants made no adequate attempt in their answer to bring themselves within the provisions of sections 2819 and 2840 of the Civil Code, or to show any exoneration by reason of the suspension or impairment of their remedies or rights against Hansbrough-Johnson Company, and their case cannot be "better proven than alleged." ' "

[3] It should be borne in mind that the bond in the instant case is a contract of suretyship and is not a statutory or official bond. Further, it is a joint and several bond as distinguished from a joint obligation only. Being a contract of suretyship it must be construed in accordance with the following provisions of section 2837 of the Civil Code: "In interpreting a contract of suretyship the same rules are to be observed as in the case of other contracts." The evidence conclusively shows that respondent's attorney in fact, and its manager, Mr. Hall, were wholly familiar with the terms and conditions of the contract for the performance of which respondent agreed to indemnify appellant in the event the principal should fail to comply with its covenants. Mr. Robertson, in a conference with C. R. Cutten, president of the McKenzie Company, and Hewitt Davenport, president of the Pacific Mill & Timber Company, discussed on the same day or on the day prior to its execution the terms of said bond. No intelligent discussion could have been had without a knowledge of the contents of the contract. As a

matter of fact, said manager of respondent had asked for and had received from Mr. Davenport a copy of said contract before the delivery of the bond to appellant by Cutten. The contract plainly provided that the McKenzie Company, party of the first part, "In order to secure said party of the second part [Pacific Mill & Timber Company] in the faithful performance by the party of the first part, of all the terms, conditions and agreements herein to be kept and performed by said party of the first part, under and by virtue of this paragraph 'Second,' said party of the first part promises and agrees to cause to be made and delivered contemporaneously herewith to said party of the second part, the guarantee of two parties acceptable to said party of the second part, and in the sum of Twelve Thousand ($12,000) Dollars that said party of the first part will keep and perform each and all of the agreements and covenants by it to be kept and performed, as set forth in this paragraph 'Second.' ' '

Paragraph "Second" contains in detail all of the material engagements of the parties. Respondent Massachusetts Bonding & Insurance Company was accepted by mutual consent of all parties in lieu of "the guarantee of two parties" as in said contract provided and no point is made as to the substitution.

It is important to notice that the binding effect of said contract is recognized by the bond as it is expressly provided that a copy of the contract "is or may be attached to said bond and become a part thereof." It is held in *Kurtz* v. *Forquer, supra,* and by many courts of various jurisdictions that when the principal is under an independent obligation, as in the instant case, to perform the various provisions of a bond, either by separate contract or by operation of law, his execution of the bond is unnecessary. So far as the McKenzie Company's liability to respondent was concerned it mattered not whether it did or did not sign the bond. Its signature would have added nothing to any legal right which respondent already had, and it was, therefore, in nowise prejudiced or deprived of any remedy by a failure of its principal to sign the bond.

"Where several persons are named in the body of the instrument as parties thereto, it is not necessarily invalid, as against those who have signed it, because others have not

signed. Such a result would follow where it appeared on the face of the instrument, or by proof, that the person sought to be charged signed upon the consideration that others named would also sign. (*Cavanaugh* v. *Casselman,* 88 Cal. 543 [26 Pac. 515].) Nothing of the kind, however, appears in the case at bar. The three sureties, who stood on the same footing, did sign the instrument; and it is evident that the signatures of the principals, who were already bound by the contract referred to in the bond, were not necessary as a consideration. Moreover, appellants delivered the bond, without the signatures of the principals, to the plaintiffs. We think, therefore, that the sureties were liable, so far as this point is concerned." (*Kurtz* v. *Forquer, supra.*) So here, respondent caused said bond to be issued after its terms had been agreed upon by respondent's officers, the president and attorney of appellant, and the president of the McKenzie Company. Respondent's agent expressly promised that the bond would be issued in compliance with the changes agreed upon and that it "would be ready in a little while." Following this meeting of the parties the bond was executed by respondent and delivered to its principal, who, in turn, delivered it to appellant.

[4] The finding of the trial court that respondent signed said bond but did not *deliver* it is not supported by the evidence in the case and cannot be sustained as a matter of law. This finding was made on the theory that although the bond did physically pass from respondent through its principal, McKenzie Mill & Lumber Company, to appellant, there was no absolute delivery, but a conditional delivery only.

The testimony as to the execution and delivery of the bond comes chiefly from Mr. John H. Robertson, the attorney-in-fact of respondent. His testimony is that he executed the bond and handed it to Mr. Cutten, president of the McKenzie Company, at the office of respondent, no others being present but himself and Mr. Cutten. This occurred on the twenty-fourth day of January, 1917. The witness, over the objection of appellant, testified that he did not intend to bind the bonding company unless the instrument was also signed by the principal; that it was his intention that after it had been signed by the president and secretary of the McKenzie Company under its corporate seal, that it should then be

delivered to appellant. He explained that it was the custom of the bonding company to prepare bonds in the office of the company and then sign, seal, and deliver the same to the principal with the request that it also sign and seal the same in the principal's office by the proper officers. The court interposed this question: "Q. But what is the custom as to delivery? A. I think that is up to the principal. I don't go around delivering these instruments. *I give them to people who apply for them.*" (Italics ours.) Witness continuing: "As a general rule the principal either through himself or through some employee comes to the office and makes some arrangement for the bond. Then so far as we can in the office we prepare it, put on the seals and stamps, etc., and then instruct them what to do with it. Then it is *our understanding* that the instrument is not complete until signed by the principal. . . . My best recollection is that I told Mr. Cutten to have that bond signed by himself as president and have its secretary sign it, and have its corporation seal attached; I don't think I told him to bring it back to me. I do not know that I used the language of telling him to give it to the company; that is what I *supposed* he would do." (Italics ours.) The witness also stated that almost invariably all transactions in bond cases to the point of time at which the bond is actually delivered to the obligee are with the principal. Nothing was said to any of appellant's officers or its attorney that respondent as a condition precedent to the delivery of said bond required its execution by respondent's principal. It is not claimed by respondent that he specifically instructed his principal *not* to deliver the bond until executed by said principal. The furthest that he is willing to go in this direction is to say that it was his intention that the bond should not be delivered by the principal to the obligee unless signed by said principal. He stated that such was his intention and understanding as to delivery. But his understanding or intention was not disclosed or made known to appellant if, indeed, it was to the McKenzie Company. It cannot be claimed that appellant had any knowledge of a secret arrangement or understanding between respondent with its principal, if any existed, as to any of the requirements of the former touching delivery. The bond was delivered by respondent to appellant and continued thereafter

to remain in its custody without any objection being made thereto on the ground that the McKenzie Company had not signed the same or on any like ground until after the case was set for trial.

On April 25, 1917, the day on which all the drafts reached maturity, Mr. Robertson was advised by letter written to him by appellant that all drafts drawn by the McKenzie Company had been paid excepting one for the sum of $500. This gave notice beyond question that the draft for $6,500 had been split into lesser amounts. In the same letter a demand was made on the surety for damages suffered by reason of the McKenzie Company having failed to keep its engagements, the exact amount of which was not then ascertainable. A month or six weeks later Mr. Robertson, upon his own suggestion, accompanied Mr. L. D. MacDonald, a representative of appellant, on a visit to the property of the McKenzie Company, situate in Sonoma County, for the purpose of looking over the property and determining what was best to be done to straighten out the situation. The question of the bonding company advancing money to the McKenzie Company as a feasible method of working out of the situation and complying with the contract was considered by respondent. No definite plan was adopted and the matter rested.

No repudiation of the bond had been hinted at by respondent up to this time or for some time thereafter.

[5] We have related the material facts touching the question of delivery so far as they are presented by the record. There is nothing upon the face of the bond, it being joint and several (*Kurtz* v. *Forquer, supra*), or in the transaction itself which imposed upon the obligee the duty of inquiring of the surety company whether any conditions had been imposed upon the McKenzie Company before delivery made. The case of *Woodman* v. *Calkins,* 13 Mont. 363 [40 Am. St. Rep. 449, 34 Pac. 187], presents facts identical with those of the instant case. In that case, as in the present, the principal had failed to sign the bond and the same defense was there made as is made in the instant case, to wit, that the bond was signed by the sureties on the condition and with the understanding that the principal should sign it before it should be delivered; that said sureties never intended nor consented that it should be delivered

192 Cal.—19

without the principal's signature, which did not appear on the bond. The court said the fact that the sureties never intended nor consented that the bond should be delivered without the signature of the principal involves no fact or condition, which, under the law, would have given the sureties any right or remedy for reimbursement which they did not already possess. The opinion concludes: "If the sureties have lost any material legal right by reason of the omission of the principal to sign this undertaking (obligating himself to do as principal what the law obliges him to do without the undertaking) it has not been pointed out or in any manner suggested in this case. It is well known that there are bonds and obligations whereby the liability of both principal and sureties arise from, and is founded upon, the instrument alone, and where the principal could neither be held liable directly to the obligee, nor collaterally as between him and the sureties without his signature, but such is not the case at bar. And we do not perceive how general suggestions of doubts respecting those cases are applicable in deciding this, or will aid in correctly deciding such other cases when they arise." (See, also, *State* v. *Peck,* 53 Me. 284; *Trustees* v. *Sheik,* 119 Ill. 579 [59 Am. Rep. 830, 8 N. E. 189].) The rule of a surety's liability on failure of the principal to sign is thus stated in 32 Cyc., page 45, as follows: "Where a surety signs a note or bond on condition that the principal also signs it, which condition is known to the payee or obligee, the surety is not liable thereon in case the principal fails to sign. But if the obligee has no notice, actual or constructive, of the condition, the surety is bound, especially if, upon learning of the nonperformance of the condition he does not raise any objection. So where a bond is good without the signature of the principal, and the sureties' recourse against him is in nowise impaired by his failure to sign, the fact that the sureties signed the bond on the express condition that the principal should also sign is no defense to an action thereon."

[6] Whether or not the answer be regarded as sufficient to raise the issue found on by the trial court to the effect that the draft drawn for the sum of $6,500 in accordance with the contract and which was at the request and for the convenience of respondent's principal on the following day

split into four drafts for the sums of $2,000, $3,500 and two for $500, respectively, equaling the said sum of $6,500, payable at the same time as the original draft, we are satisfied that the evidence does not sustain the finding of the trial court that this change in form materially changed the terms of said agreement to the detriment of respondent. The change in form and urged as a defense produced no material change in the terms of the contract and in nowise could have resulted in detriment to respondent. The fact that an officer of the McKenzie Company, acting within the scope of his employment, but in violation of his duties, misapplied or appropriated to his own use one of the drafts forming an integral part of the whole was no more the proximate result of the act complained of than would have been the appropriation of one of the rolls of coin containing a like sum had the original amount been payable in coin only. It would have been just as easy to have misappropriated the full amount represented by the $6,500 draft or any part thereof as it was to misappropriate one of the divisible parts of said original draft. The obligation for which indemnity was given was not increased by the splitting of the original draft into four parts. It amounted to a mere variance of the form of the contract without changing its substance. To hold otherwise would, under the circumstances of the instant case, be sacrificing substance to form and thereby defeat the main object of the contracting parties, which was to transfer $6,500 to respondent's principal to be used partly as a working capital so as to enable it to perform its obligations. No claim is made that any officer of the corporation for whose faithful performance of the contract respondent became surety was not the rightful custodian of the draft in its original form or in any form which it might thereafter have assumed.

[7] The point made by respondent that the only acts which the McKenzie Company were required to perform under the contract were to deliver the lumber when ordered and "to place to the credit" of the appellant the difference between the amount of the draft and the contract price of the lumber is wholly without merit. The contract discloses a practical working plan. To construe it in such a manner as to exonerate the surety from liability on the theory that the bare placing of the credit to the account of appellant on

the books of the McKenzie Company for moneys advanced for materials to be furnished by it would be doing violence to the object of the parties and render the contract meaningless and without purpose.

The judgment is reversed.

Lawlor, J., Waste, J., Kerrigan, J., and Lennon, J., concurred.

MYERS, J., Concurring.—I concur in the judgment upon the ground that the evidence does not, in my opinion, sustain the finding of the trial court to the effect that the bond was executed by the surety upon the condition it was not to be delivered unless or until it should have been executed by the principal. I think it fairly appears from the evidence that the bond was executed by the surety company unconditionally and that the direction of its manager to have the bond signed by the president and secretary of the principal was a mere suggestion as to the method of procedure and was not intended to and did not have the effect of imposing a condition precedent upon its delivery.

I concur in the conclusion of Mr. Justice Seawell that the splitting up of the $6,500 draft into four smaller drafts aggregating the same amount, payable at the same time and upon the same terms, did not amount to a material alteration of the original contract. I agree, also, with the conclusion that the contract was not performed by the mere placing of the amount of the draft to the credit of appellant upon the books of the McKenzie Company.

Wilbur, C. J., concurred.