[Civ. No. 12869. First Dist., Div. Two. Nov. 9, 1945.]

NYE AND NISSEN, INC. (a Corporation) et al., Appellants, v. CENTRAL SURETY AND INSURANCE CORPORATION (a Corporation), Respondent.

Freed & Freed and Wm. F. Cleary for Appellants.

Worthington, Park & Worthington for Respondent.

NOURSE, P. J.—Plaintiffs sued to recover on a bond of indemnity covering the employees of Nye and Nissen, Inc. and its "financially controlled organizations or enterprises." The complaint alleged that through defalcations of an em-

ployee of Puget Sound Egg Packers Corp., Inc. (hereinafter referred to as Puget Sound), a loss of over $4,000 was sustained, that due proof of loss was made in accordance with the terms of the bond, and that payment was refused. Recovery was sought in the sum of $2,500, the maximum amount covering a single employee under the bond. Judgment went for defendant upon findings which the plaintiffs attack as being contrary to law and the evidence.

The complaint was grounded upon the theory that, though the indemnity bond named Nye and Nissen as the insured it also was made applicable to the organizations and enterprises "financially controlled" by Nye and Nissen, and hence was a contract expressly made for the benefit of a third party—the Puget Sound Egg Packers Corp., Inc.—upon which Nye and Nissen was authorized to sue under the provisions of section 369 of the Code of Civil Procedure.

The trial court found on this issue that Nye and Nissen exercised some supervisory control over their co-appellant, that the defaulting employee was an employee of Puget Sound "according to the requirements of the bond," but that Nye and Nissen had no right to maintain this action because the "financial control" was in Baum and Moncharsh who were the owners of the stock of Puget Sound, and that there was no pleading or evidence that Nye and Nissen brought this action as "trustee" for their coappellant.

The finding cannot be sustained. The ownership of the stock does not in itself determine the question of the control of the enterprise. The uncontradicted evidence is that Baum and Moncharsh were located in New York, that they owned the stock of both corporations, but that the business affairs of both were conducted in San Francisco under the supervision and control of Nye and Nissen. The question of the capacity of Nye and Nissen to sue in behalf of its co-appellant is settled by these two factors: the contract of indemnity was expressly made for the benefit of Puget Sound, but, if there is any uncertainty in this respect the contract must be so interpreted against the insurer.

That, at the time the bond and its renewals were executed, the parties were fully informed of the financial and business management of the two corporations is not disputed. Nor does it appear that any other "organizations or enterprises" were "financially controlled" by Nye and Nissen or that any other such organizations were within the contemplation of the parties at that time. To the contrary when the original

bond was issued in June, 1939, it contained as an integral part an excess indemnity endorsement which read: "It is agreed that, subject to the terms of the bond to which this endorsement is attached, the amount of excess indemnity on the Employees performing the duties of the following positions (which are covered by said bond) shall be the amount set opposite the names of those positions respectively."

"Positions, President, Puget Sound Egg Packers, Inc., Tacoma, Washington...........$25,000."

Thus by the terms of the bond the insurer stipulated that the employees of Puget Sound "are covered by said bond." No stronger language was necessary to convey to the insured the intention of the insurer to accept Puget Sound as one of the "financially controlled organizations." Hence, the contract of indemnity was one made for the benefit of Puget Sound and was a contract contemplated in sections 367 and 369 of the Code of Civil Procedure, wherein it is provided that "Every action must be prosecuted in the name of the real party in interest, except as provided in section three hundred and sixty-nine of this code." (§ 367.) "An executor or administrator, or trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the persons for whose benefit the action is prosecuted. A person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section." (§ 369.)

This conclusion seems inescapable, but if there be any doubt as to the "express" terms of the contract the result is the same because it is the settled rule that a contract of insurance must be interpreted against the insurer when ambiguous. Here the insurer definitely caused the insured to understand that all the employees of Puget Sound were covered in the bond and that is sufficient to make that organization one for whose "benefit" the contract was made.

Respondent relies upon the finding: "that there is no adequate pleading nor evidence presented before this Court indicating that the Plaintiff, NYE AND NISSEN, INC., is bringing this action as trustee for the PUGET SOUND EGG PACKERS, INC., a corporation." This finding has no legal or evidential support. The complaint alleges that the "Puget Sound Egg Packers, Inc., is included as an assured under said agreement." This was, in legal effect, a pleading that the contract was one made "for the benefit" of Puget Sound. It was not denied in the answer, and no demurrer for uncertainty was

interposed. ▮ If the finding was made on the theory that the complaint should have used the word "trustee" it is nevertheless error because section 369, *supra,* supplies that terminology when the pleading discloses that the contract in suit was one "made for the benefit" of the third party in whose behalf the suit is maintained.

▮ The portion of the finding stating that there was no adequate evidence "indicating" the relation of trustee cannot be sustained. The bond of indemnity, the endorsements attached to it, and all the other documentary and oral evidence showed without any conflict that Nye and Nissen was suing on behalf of Puget Sound and that it was by reason of the defalcations of an employee of Puget Sound that the latter organization suffered a loss of $4,273.48 as alleged in the complaint.

▮ Appellants criticize the finding that "The evidence is wholly lacking of any substantial fact or proof indicating that the PUGET SOUND EGG PACKERS, INC. sustained a loss of FOUR THOUSAND TWO HUNDRED SEVENTY-THREE AND 48/100 ($4,273.48) DOLLARS, or any other sum. The evidence fails to support the allegation that JOE STEMP had caused the PUGET SOUND EGG PACKERS, INC. any loss of money or personal property as alleged in Paragraph VII. That all of the proof offered as to the matters referred to in this paragraph is of a hearsay character and is excluded by the Court in making its findings herein." This finding cannot be sustained. The uncontradicted evidence, both oral and documentary, disclosed the exact amount of the loss sustained by Puget Sound, that Joe Stemp was one of its employees, that he caused the loss by reason of his own defalcations, and that he fully confessed his acts in that regard. The record also discloses that additional documentary evidence was offered to prove the various accounts and the shortages in cash but that such evidence was rejected by the trial court upon a ruling that sufficient facts were already proved.

For a number of years Joe Stemp had been an employee of Puget Sound. He was given a designated territory within which he solicited, sold, and delivered eggs to some forty-five grocery stores in the city of Tacoma, Washington. William Moncharsh was the president and local manager of Puget Sound in Tacoma. The books of the concern were kept under his direction and in December, 1940, a check of the books disclosed that Stemp had charged these customers with deliveries which he had not made. Moncharsh called Stemp before him

and the latter made a complete confession that he had sold the eggs to others and retained the proceeds. Thereafter checks were made of the accounts of the regular customers and, with the aid of Stemp, the Puget Sound books were checked and this disclosed that Stemp had defaulted in the sum of $4,273.48. Testimony disclosing these circumstances was given by the witness Moncharsh who had in his possession in the court room delivery tags, invoices, ledger cards, and other books of account showing the shortages in eggs taken out by Stemp and falsely charged to the various regular customers. At the suggestion of the court these documents were not received in evidence and the proof of loss theretofore filed with the surety company was accepted in lieu of the records of Puget Sound to show the losses occurring from Stemp's transactions. It was thereupon stipulated that the "proof of loss" theretofore filed with the surety under the requirements of the bond should be accepted as a full list of the accounts of Puget Sound as shown on the books of the concern and which were examined and checked by the witness and Stemp, and which disclosed the defalcations of Stemp according to his confession and admissions made to the witness at the time the check was made.

When the witness was asked to repeat the conversation with Stemp in which he gave in detail the shortages in the individual customers' accounts the objection was made that the testimony was hearsay. Following an argument the respondent suggested that the testimony be received subject to a motion to strike out. This was agreed to by the court and respective counsel and the testimony was admitted. No motion to strike this testimony was made. Following it an employee of Nye and Nissen testified, without objection, that he had personally examined the books of Puget Sound and had interviewed each of the twenty-six customers of Stemp and checked with them their paid invoices as compared with their accounts appearing on the books of Puget Sound. The respondent elicited from this witness on cross-examination that the witness had prepared the figures appearing in the "proof of loss" after checking with the various groceries, checking their balances and their paid invoices.

The trial court found: "That all of the proof offered as to the matters referred to in this paragraph is of a hearsay character and is excluded by the Court in making its findings herein."

Appellants argue that this conclusion is contrary to law and cites sections 1851 and 1870, subdivision 7 of the Code of Civil Procedure, and also *Piggly Wiggly Yuma Co.* v. *New York Indemnity Co.*, 116 Cal.App. 541, 542 [3 P.2d 15]. Section 1851 provides: "And where the question in dispute between the parties is the obligation or duty of a third person, whatever would be the evidence for or against such person is prima facie evidence between the parties." Subdivision 7 of section 1870 makes admissible: "The act, declaration, or omission forming part of a transaction, as explained in section eighteen hundred and fifty." The rule in the Piggly Wiggly case rests upon an interpretation of these sections in a case involving the admissibility of a statement of a defaulting employee in a suit such as this brought by the employer to recover upon an indemnity bond. In holding the evidence admissible under the code sections the court said: "The testimony offered was the statement made by the defaulting employee at the time he was first accused by plaintiff of his embezzlement. His appropriation of plaintiff's funds was the foundation for this suit and his statement in relation thereto comes within the rule announced." The same principle is followed in *Butte County* v. *Morgan,* 76 Cal. 1 [18 P. 115]; and in *Langley* v. *Zurich Gen. A. & L. Ins. Co.,* 219 Cal. 101, 104 [25 P.2d 418]. It is true that the books of the employer were offered in evidence in the Piggly Wiggly case, and that other evidence was offered corroborating the testimony of the employee's confession, but the principle found in the interpretation of the code sections is a complete answer to the question raised here.

But the exclusion of this testimony was error for another reason because all the testimony was received by stipulation subject to a motion to strike it out. Such motion not having been made the objection to its admissibility must be deemed waived. (*Estate of Wempe,* 185 Cal. 557, 564 [197 P. 949]; *Fraher* v. *Eisenmann,* 94 Cal.App. 48, 52 [270 P. 704]; *De Tray* v. *Higgins,* 31 Cal.App.2d 482, 488 [88 P.2d 241].)

Respondent makes answer that possibly the court rejected all this evidence as untrue and that this was an act within the discretion of the court and not subject to review. But evidence of a particular fact "until contradicted and overcome by other evidence" is prima facie evidence of that fact. (Code Civ. Proc., § 1833.) Such evidence cannot be arbitrarily rejected. In *Gomez* v. *Cecena,* 15 Cal.2d 363, 366

[101 P.2d 477], the Supreme Court said: "While no universal and immutable formula can be prescribed for determining the weight to be accorded testimonial evidence, it has frequently been said that testimony which is not inherently improbable and is not impeached or contradicted by other evidence should be accepted as true by the trier of fact." (Citing cases.)

The judgment is reversed.

Goodell, J., and Dooling, J., concurred.