[Civ. No. 18012. Second Dist., Div. Two. Dec. 28, 1950.]

STANDARD OIL COMPANY OF CALIFORNIA (a Corporation), Respondent, v. V. C. HOUSER, Appellant.

McLaughlin & Casey for Appellant.

Lawler, Felix & Hall for Respondent.

WILSON, J.—The principal question presented in this action relates to the construction of a written guaranty signed by defendant, which is the basis of the judgment rendered against him from which he has appealed. He admits the

execution of the document but disputes liability thereunder. The guaranty reads as follows:

"Los Angeles Calif 9/18 1947
Station Date

"STANDARD OIL COMPANY OF CALIFORNIA

"Gentlemen:

"For value received, the undersigned hereby guarantees the payment, when due, of all your charges for the account of Eagle Air Freight,

"Residing at Lockheed Air Terminal—Burbank, (hereinafter referred to as the 'Customer'), of whatever nature, and including all charges pursuant to the terms of Credit Cards issued by you to said Customer, for goods sold and delivered on or after this date. The undersigned hereby waives diligence, demand and notice from you or on your part. This guaranty is a continuing one and shall remain in force until you receive, at your Los Angeles office, written notice of the termination thereof from the undersigned, and for such further time after the receipt of such written notice of termination as Credit Cards issued by you prior to such notice to said Customer shall be outstanding and shall by their terms entitle the person in possession thereof to purchase goods upon the credit of said Customer.

Dated 9-18 , 1947 V. C. Houser
 Address 3200 Durand Dr.,
2 Credit Cards only— L. A. 28, Cal."

After the execution of the guaranty plaintiff issued two credit cards to Eagle Air Freight which read in part as follows, the omissions relating to matters not relevant to this action:

"This credit card may be used by the customer named hereon to purchase authorized merchandise and services . . . sold at Standard Stations, Inc., Chevron Gas Stations, and airports supplied by Standard Oil Company of California.

"This card may also be used to purchase petroleum products . . . at dealers, service stations, and airports supplied by other companies named on the inside hereof . . .

"The license number of vehicle or airplane taking delivery must be entered on the delivery receipt at time of sale. Card must be presented at time of delivery.

". . . Should the customer permit any other person to have this Card, the customer agrees to pay for all purchases furnished such person hereunder . . ."

The assignment of errors upon which defendant relies is thus stated in his brief:

"1. The guaranty of credit extended on sales by concerns other than respondent was limited to sales pursuant to the terms of the credit cards. The trial court, therefore, erred in awarding a recovery on account of such sales where they were not shown to have been made upon presentation of such credit cards.

"2. There was no competent evidence of any sales to Eagle Air Freight or of any indebtedness which might create a liability under the guaranty."

Eagle Air Freight, a corporation, was, until the filing of its voluntary petition in bankruptcy on October 26, 1948, engaged in carrying freight by air in and through several western states and occasionally others; its principal place of business was at Lockheed Air Terminal in Burbank; it owned three freight-carrying airplanes, had three others under charter for a considerable period, and chartered several others from time to time. Under most of the charters Eagle furnished the gasoline; at the time the guaranty was signed defendant was a creditor, stockholder and director of Eagle and was chairman of its board; he acted as president from the latter part of July until the bankruptcy proceedings were instituted.

Prior to September 18, 1947, the date of the guaranty, plaintiff had sold gasoline and oil to Eagle on a cash basis; the guaranty was executed, according to defendant's statement, when he was told it was needed in order that Eagle could save money by buying gasoline on credit.

After the signing of the guaranty and at each quarterly period thereafter plaintiff issued two national credit cards to Eagle, each card bearing Eagle's name and address and the credit card number assigned to its account. The cards were in the form above quoted.

The usual procedure for the sale of gasoline by independent dealers was as follows: At the time of each delivery the dealer made out a delivery receipt in quadruplicate on which was placed Eagle's name and address, the credit card number, the kind and quantity of merchandise purchased, and the price; the person taking delivery signed the dealer's receipt and received a copy of it; the dealer kept a copy and sent the original and one copy to plaintiff. After plaintiff received the original and copy of the delivery receipt it credited the amount shown thereon to the independent dealer and then repriced Eagle's delivery receipts, on which it was entitled

to a reduced price based on the quantities purchased at certain airports. Plaintiff then made the appropriate charge against Eagle's account; the original delivery receipts were sent to Eagle, together with a billing invoice. Once each month plaintiff sent to Eagle a statement showing the charges, credits and balance due as shown by plaintiff's ledger. Eagle thus received as a record of its purchases (1) the duplicate delivery receipts furnished by the dealer at the time of delivery, (2) the original delivery receipts sent to Eagle after plaintiff received them, (3) a billing invoice with the original delivery receipts, and (4) a monthly statement showing debits, credits and balance due.

Defendant, while acting as chairman of the board, called and attended meetings of Eagle's directors and visited its offices on other occasions; he appointed his wife as his agent to act for him in the management and control of his interest in the corporation. After the signing of the guaranty she opened a special bank account in their joint names for the purpose of paying the gasoline bills; under the arrangement with Eagle the latter was to pay defendant when purchases were made and he in turn was to pay plaintiff when the statement was received. By this arrangement defendant's wife was to have available money sufficient to pay the monthly statement when rendered; she received money from Eagle, deposited it in the special bank account, and saw the delivery receipts when payments were made; on her check stubs she recorded the kind or place of gasoline delivery.

After April 12, 1948, Mrs. Houser received no further checks from Eagle, whereupon she wrote to the latter's secretary and treasurer demanding payment in order that she might pay plaintiff, stating ''either I have this or I will be forced to close the credit account.'' Neither defendant nor his wife ever exercised the right reserved in the guaranty to terminate liability under it.

Defendant was president of Eagle at the time its voluntary petition in bankruptcy was filed, and as president verified the petition showing that Eagle was indebted to plaintiff in the sum of $88,919.50, which exceeded the sum sued for in this action.

Defendant's first specification of error, to wit, that the guaranty of credit extended on sales by dealers other than plaintiff was limited to sales pursuant to the terms of the credit cards, demands a construction of the guaranty. Defendant guaranteed the payment ''of all your charges'' for

Eagle's account ''of whatever nature, and including all charges pursuant to the terms of Credit Cards issued by you'' to Eagle. The guaranty is ''of all your charges . . . of whatever nature.'' This terminology includes without limitation all charges of any and every kind made by plaintiff against Eagle. The words ''including all charges pursuant to the terms of Credit Cards'' add nothing to the strength of the guaranty but merely draw attention to and emphasize the fact that defendant, by signing the document, guaranteed not only plaintiff's charges but all charges made pursuant to the credit cards which were authorized to be honored by dealers, service stations and airports named on the inside of the credit cards.

The words ''for goods sold or delivered on and after this date'' apply likewise to ''all your [plaintiff's] charges'' and to charges made by other dealers named on the inside of the credit cards.

The endorsement ''2 Credit Cards only'' was made by defendant at the time he signed the guaranty, his reason being that since Eagle owned three airplanes, two would always be in service and two credit cards would be sufficient. The record shows and the court found that only two credit cards were in force at any one time.

Defendant's contention that two separate types of sale were covered by the guaranty (1) charges for goods sold by plaintiff, and (2) charges for goods sold by independent dealers pursuant to the credit cards, is untenable. There is nothing confusing, ambiguous or uncertain in the terms of the guaranty. There is no condition precedent that charges must have been made on the credit cards. The reference to such cards was merely a specific inclusion of charges made on such cards as well as other charges against Eagle.

There can be no contention that the credit cards are a part of the guaranty or were regarded by defendant as such since no credit cards were issued until after the guaranty had been signed. Plaintiff determined the terms to be inserted in the cards and defendant did not know what such terms would be when he executed the guaranty. The conditions upon which the cards might be used were subject to change by plaintiff from time to time and at any time. Hence it is manifest that the terms and conditions of the credit cards did not enter into the guaranty.

To defendant's contention that the evidence is insufficient to sustain the findings and judgment for the reason that there is no proof (1) that credit cards were presented at the

time gasoline and oil were delivered to the airplanes owned or chartered by Eagle, (2) that delivery receipts were not signed by the pilot to whom delivery was made, there are three answers: (1) Defendant's counsel admitted that "they [plaintiff's counsel] have put on a prima facie case as to Eagle. By putting in the documents, that they put in a prima facie case as to Eagle's liability"; (2) several hundred delivery receipts were introduced in evidence and defendant has not pointed out which, if any, are not properly authenticated; (3) the guaranty covered all plaintiff's charges, and plaintiff made the charges shown by its monthly statements for goods sold by itself and by independent dealers named in the credit cards.

A contract of suretyship is governed by the rules applicable to the interpretation of other contracts. (Civ. Code, § 2837.) ▆ The intent of the parties to a contract of suretyship is ascertained, first, by resort to the contract itself, and if the intention of the parties cannot be ascertained with certainty from the contract then resort may be had to the surrounding circumstances to determine its meaning (*Schwab* v. *Bridge,* 27 Cal.App. 204, 206 [149 P. 603]), but if the contract is so precise and express that there can be no doubt as to the intention of its terms the court cannot do otherwise than follow the declared intention of the parties. (*Idem,* p. 207.) "A suretyship obligation is to be deemed unconditional unless its terms import some condition precedent to the liability of the surety." (Civ. Code, § 2806.)

A future liability of the principal, under successive transactions, is called a continuing guaranty. (Civ. Code, § 2814.) Defendant did not guarantee any specific contract between plaintiff and Eagle but did guarantee all plaintiff's charges for the account of Eagle. In *Sopris* v. *Continental Manufacturing Corp, Ltd.*, 6 Cal.App.2d 416 [44 P.2d 615], the appellant guaranteed payment for 50,000 brushes. At the time of the execution of the guaranty a contract for the brushes had not been made. Thereafter the manufacturer and purchaser made a contract for 50,000 brushes specifying price, terms of payment, time and place of delivery. The court held that appellant did not guarantee a specific contract but that the guaranty was general in its terms for the payment of the number of brushes specified in the written guaranty.

▆ In the instant case no sale or contract of sale of gasoline had been made and the credit cards had not been issued. Hence the direct applicability of the Sopris case. The quantities, prices, and terms of the agreements of sale from

plaintiff to Eagle and from independent dealers to Eagle were of no concern to defendant since he guaranteed payment of all goods sold to Eagle on credit.

Since defendant was an unconditional guarantor his liability is coextensive with that of Eagle. (*Mannix* v. *Wilson,* 18 Cal. App. 595, 601 [123 P. 981] ; *Benjamin* v. *Hillard,* 23 How. (64 U.S.) 149, 164 [16 L.Ed. 518, 521].) ▮ Defendant's admission, therefore, that a prima facie case had been made against Eagle is an admission of his own liability.

Defendant admitted the execution of the guaranty in the terms pleaded in the complaint. ▮ He did not plead any limitation, condition precedent, exoneration, or any similar defense. Such matters are affirmative defenses and are not available unless pleaded. (Code Civ. Proc., § 437; *Blackwood* v. *McCallum,* 187 Cal. 655, 659 [203 P. 758] ; *Pacific M. & T. Co.* v. *Massachusetts B. & I. Co.,* 192 Cal. 278, 285 [219 P. 972] ; *Hobson* v. *Metropolitan Casualty Ins. Co.,* 120 Cal. App. 727, 730 [8 P.2d 150].)

Relying upon the guaranty plaintiff issued two credit cards to Eagle. ▮ Defendant contends there is no evidence that the cards were presented at the time of delivery of the gasoline or that receipts were given therefor. Conceding that such proof is necessary, although as we have already stated it was not, it must be assumed that the regular course of business was followed and that Eagle received a copy of the delivery receipt for each purchase of merchandise. Approximately 2,000 delivery receipts were received in evidence; a few did not bear Eagle's name or its credit card number; however, they afforded evidence that they came into plaintiff's hands in the ordinary course of business and the evidence shows that the originals of such delivery receipts were forwarded to Eagle with the monthly statements. The presumption ''That the ordinary course of business has been followed'' (Code Civ. Proc., § 1963, subd. 20) remains uncontradicted and therefore has the effect of establishing a prima facie case. (*Donovan* v. *Security-First Nat. Bank,* 67 Cal.App.2d 845, 853 [155 P.2d 856].) ▮ A rebuttable presumption is a species of evidence which, standing alone, will support a finding even against contradictory evidence produced by the other party. (*Smellie* v. *Southern Pacific Co.,* 212 Cal. 540, 549 *ff* [299 P. 529] ; *Lieber* v. *Rigby,* 34 Cal.App.2d 582, 584 [94 P.2d 49].) Moreover, appellant, through his wife as his agent, was an active participant in and had knowledge of the manner in which gasoline was purchased and knew what the ordinary

course of business was and that it was being followed. For a considerable period of time Eagle was required to pay and did pay defendant the amount of purchases made; Mrs. Houser opened a special bank account in which money received from Eagle was deposited and out of which plaintiff was paid when the monthly bills were received, to which were attached delivery receipts from the service stations or airports which sold the gasoline on the strength of the credit cards.

 Since defendant guaranteed payment of all charges against Eagle the actual question which the trial court had to determine was the obligation of Eagle. Hence whatever is evidence against Eagle is evidence against defendant. (Code Civ. Proc., § 1851*; *Piggly Wiggly Yuma Co.* v. *New York Indemnity Co.*, 116 Cal.App. 541, 542 [3 P.2d 15]; *Butte Co.* v. *Morgan*, 76 Cal. 1, 5 [18 P. 115]; *Nye & Nissen, Inc.* v. *Central etc. Ins. Corp.*, 71 Cal.App.2d 570, 575-6 [163 P.2d 100].) Therefore defendant's admission of a prima facie case against Eagle is an admission of a prima facie case against him. Eagle's delivery receipts for gasoline and oil are admissions that it received such merchandise, permitted and authorized by the credit cards to be sold to it and that it was received in the ordinary course of business and, pursuant to the authorities last above cited, constitute evidence of defendant's liability.

Since the instrument signed by defendant is not a conditional or qualified guaranty defendant's argument to that effect and citations relating to such a guaranty are not pertinent.

 Defendant contends that plaintiff failed to produce competent proof of any sales, the contention being based on the fact that approximately 2,000 sales slips were received in evidence without proof that they were signed by pilots in the employ of Eagle. Not only is the presumption to be invoked that the ordinary course of business was being followed but defendant admitted a prima facie case against Eagle and evidence was supplied by (1) the manner in which gasoline was sold for use in Eagle's airplanes; (2) plaintiff's books of account which were admitted after their authenticity had been established by their custodian; (3) Eagle's books of account, after like authentication; (4) the evidence of an auditor that

---

*Section 1851 reads: ''And where the question in dispute between the parties is the obligation or duty of a third person, whatever would be the evidence for or against such person is prima facie evidence between the parties.''

he had completely examined and audited plaintiff's books including the delivery receipts and had reconciled them with Eagle's records which were then in the hands of the referee in bankruptcy; (5) Eagle's petition in bankruptcy, sworn to by defendant as its president on October 23, 1948, two days after the commencement of the instant action, in which plaintiff was listed as a creditor of Eagle in a sum greater than the amount sued for in this action and more than the amount of the judgment rendered against defendant.

██ Since there was evidence of the authenticity of the books of account of both plaintiff and Eagle they were admissible in evidence under the "Uniform Business Records as Evidence Act" found in sections 1953e to 1953h of the Code of Civil Procedure. (*Loper* v. *Morrison*, 23 Cal.2d 600, 608-9 [145 P.2d 1]; *Doyle* v. *Chief Oil Co.*, 64 Cal.App.2d 284, 292 [148 P.2d 915]; *Thompson* v. *Machado*, 78 Cal.App.2d 870, 874 [178 P.2d 838].) ██ By reason of the statute last cited, tags prepared by a supply company showing delivery and return of linen were held to be admissible as evidence of the number of pieces of linen delivered to defendant over a period of three years. (*Oakland California Towel Co.* v. *Zanes*, 81 Cal.App.2d 343, 345 [184 P.2d 21].)

Since under the authorities the delivery receipts and books of account of both plaintiff and Eagle were admissible and were received in evidence, defendant's argument must be deemed to be directed to the weight of the evidence rather than to its sufficiency—a matter which should have been and no doubt was addressed to the trial court.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied January 10, 1951, and appellant's petition for a hearing by the Supreme Court was denied February 19, 1951.